**COMMANDER PROPERTIES, INC., Petitioner,**

v.

**FEDERAL AVIATION ADMINISTRATION, Respondent,** ·

**Beech Aircraft Corporation and Raytheon Company, Intervenors.**

**No. 92–1235.**

United States Court of Appeals, District of Columbia Circuit.

Argued Nov. 12, 1993.

Decided Dec. 21, 1993.

As Amended Jan. 25, 1994.

Linda H. Joseph, Buffalo, NY, argued the cause and filed the briefs for petitioner.

Wilton J. Smith, Atty., F.A.A., Washington, DC, argued the cause for respondent. With him on the brief was Allan H. Horowitz, Manager, F.A.A., Washington, DC.

Joseph E. Schmitz, Washington, DC, argued the cause for intervenors. With him on the brief were Judith Richards Hope, Washington, DC, Robert Martin and Terry L. Malone, Wichita, KS.

Before: BUCKLEY and RANDOLPH, Circuit Judges, and LEVIN H. CAMPBELL*, Senior Circuit Judge.

Opinion for the court filed by Circuit Judge RANDOLPH.

RANDOLPH, Circuit Judge:

Commander Properties, Inc. brings this petition for review of the Federal Aviation Administration's final order dismissing its complaint. The tangled procedural setting of the case is unnecessary to describe in great detail. Commander's journey to the FAA began in the United States District Court for the District of Kansas. Commander had filed a class action against Beech Aircraft Corporation and Raytheon Company (Beech's parent company) for damages based on, *inter alia,* theories of tort law and breach of warranty under state law. The essence of the allegations was that Commander and the other members of the class owned certain models of Beech King Air aircraft, that the aircraft's wing design was defective and that plaintiffs would incur costs to modify the wings. The Kansas district court ruled that two questions raised in the suit were "particularly appropriate for resolution by the FAA:" (1) whether the Beech wing design is

defective; and (2) whether the proposed wing modification will correct the defect and make the aircraft "airworthy." The court stayed the class action so that Commander could seek the FAA's judgment on these questions.

Commander thereupon filed a formal complaint with the FAA pursuant to 14 C.F.R. § 13.5, which permits such filings by any person alleging, among other things, violation of airworthiness requirements. Commander requested the FAA to decide whether the Beech King Air complied with certain FAA certification regulations. The FAA dismissed the complaint by letter, as 14 C.F.R. § 13.5(h) allows when a complaint does not state facts warranting an investigation. After Commander submitted more information, including material regarding Airworthiness Directives,[1] the FAA issued another letter, this one answering the district court's first question, and stating among other things:

> The Beech wing design is not defective in terms of its structural strength so long as the Airworthiness Directives (AD's) are complied with and the aircraft is flown within its approved flight envelope.

The FAA accordingly deemed the district court's second question moot. When Commander tried to perfect an administrative appeal, the FAA informed the company that its letter constituted final agency action.

■ The Federal Aviation Act contains a savings clause preserving common law remedies. 49 U.S.C. app. § 1506. Commander protests that the FAA, in finding the aircraft not "defective," rendered a judgment on the common law claims raised in Commander's Kansas lawsuit, matters Commander claims are beyond the agency's authority.[2] But the

---

* Of the United States Court of Appeals for the First Circuit, sitting by designation pursuant to 28 U.S.C. § 294(d).

1. Airworthiness Directives are issued by the FAA when an unsafe condition exists in a product and that condition is likely to exist or develop in other products of the same type or design. 14 C.F.R. § 39.1. No product subject to an Airworthiness Directive may be used unless the directive is satisfied. 14 C.F.R. § 39.3. Directives are issued in conjunction with the FAA's continuing review of the airworthiness of aircraft.

2. The FAA and Beech counter that because Commander never raised this argument before the

FAA, 49 U.S.C. app. § 1486(e) forecloses our consideration of it. So far as pertinent, this section states:

> ... No objection to an order of the Board or Secretary of Transportation shall be considered by the court unless such objection shall have been urged before the Board or Secretary of Transportation or, if it was not so urged, unless there were reasonable grounds for failure to do so.

Commander did not ask the FAA to pronounce on its common law claims and doubtless did not anticipate the agency doing so *sua sponte.* If we assume *arguendo* that Commander's view of the FAA's decision is correct (it is not), the compa-

FAA's letter used the term "defective" in the sense the agency uses it in its Brief (at p. 25)—as "a condition that might cause an aircraft to fall to a lower safety standard than that justifying its airworthiness certification." Everyone agrees that the FAA had the power to decide—indeed, Commander requested the FAA to decide—whether the aircraft was properly certified and therefore airworthy. 49 U.S.C. app. § 1482(a); 49 U.S.C. app. § 1421(a)(1). The FAA's choice of language was in keeping with terminology contained in FAA regulations, which mention "defect" and "defect in design" several times. *See, e.g.,* 14 C.F.R. §§ 21.3, 21.277, 21.477. Any notion that the FAA's letter meant something more is flatly inconsistent with the letter's opening paragraph describing Commander's claim as being that "the wings of [certain] King Air aircraft *were improperly certificated and thus defective.*" In discussing the wing design, the FAA said not a word about the common law. Instead, the agency referred to its regulations concerning testing for strength and load requirements and found that the aircraft was "airworthy" (complied with FAA standards), because the past problems had been corrected.[3]

■ Commander's second argument, no more trenchant than its first, is that the FAA's decision is arbitrary and capricious. Most of Commander's criticism proceeds from the quite mistaken premise that the FAA assumed the role of a common law court in finding the aircraft not defective. Thus we are told of one Airworthiness Directive after another requiring problems with the aircraft to be corrected. None of this undermines the FAA's decision in the slightest. The FAA found that the aircraft passed the initial certification testing and is currently "airworthy" because of those corrections. *See supra* notes 1 & 3. As the FAA stated

in its second letter, the list of malfunction and defect reports Commander cited "concern[s] airworthiness issues that had already been addressed by AD's or other appropriate action," and therefore was not on point.

All that remains is Commander's conclusory assertion that the FAA should have given credence to evidence gathered during accident investigations. The Beech King crashed several times, Commander says, because a certain bolt on the wing failed. The FAA examined the material Commander submitted in support of this hypothesis and found that although the bolt failed, this "resulted from excessive stresses induced by attempts to recover from instances of loss of control of the aircraft." One therefore cannot say that the wing design did not meet certification standards, or that after compliance with the Airworthiness Directives the aircraft still was not airworthy. *See* 14 C.F.R. § 39.3. These were the only questions before the FAA and these were the only questions the agency decided. We see nothing that would undercut the FAA's answers to those questions. Whether Commander is correct that the Airworthiness Directives, increased inspections, and accident reports show that the wing design was "defective" as a matter of tort law is not for us to say.

The petition for review is denied.

ny's first opportunity to interpose its objection came after the second letter issued. The FAA told Commander that it could not appeal the decision to some higher authority within the agency. At that point Commander might have put its argument before the FAA in a petition for rehearing. *See United States Dep't of Commerce v. FLRA,* 7 F.3d 243, 245–46 (D.C.Cir.1993). But the FAA admitted, in its argument before us, that the agency has no procedure allowing complainants to file for reconsideration. Thus, in the words of § 1486(e), there are "reasonable

grounds" for Commander's not urging the objection in the administrative proceedings.

3. The FAA referred to the aircraft's current status, not to problems arising after initial certification. The FAA ultimately concluded that the aircraft is not defective "so long as Airworthiness Directives are complied with," which presumably means that compliance with the Airworthiness Directives was necessary to bring the aircraft up to the FAA standards.