COMMANDER PROPERTIES CORP.,
Individually and on behalf of all others similarly situated, Plaintiff,

v.

BEECH AIRCRAFT CORP. and
Raytheon Company Corp.,
Defendants.

No. 88–2202–EEO.

United States District Court,
D. Kansas.

Dec. 5, 1995.

As Corrected, Nunc Pro Tunc April 8, 1996.

Stewart M. Stein, Buck, Bohm & Stein, P.C., Leawood, KS, Edward P. Yankelunas,

Linda H. Joseph, James R. Arnone, Randy C. Rucinski, Jaeckle, Fleischmann & Mugel, Buffalo, NY, for plaintiff.

Paul B. Swartz, Terry L. Malone, William Robert Martin, Martin, Pringle, Oliver, Wallace & Swartz, Wichita, KS, Reed O. Gentry, Robert R. Barton, Field, Gentry & Benjamin, P.C., Kansas City, MO, for defendants.

## MEMORANDUM AND ORDER

EARL E. O'CONNOR, District Judge.

This matter is before the court on the motion of plaintiff Commander Properties Corporation ("Commander") for class action certification (Doc. # 225) and the related motion by defendants Beech Aircraft Corporation ("Beech") and Raytheon Company Corporation ("Raytheon") to strike certain affidavits filed in support of Commander's motion for certification (Doc. # 234). Commander seeks certification of its complaint as a class action pursuant to Federal Rule of Civil Procedure 23(a) and 23(b)(3). Defendants oppose class action certification. The parties have fully briefed the certification motion and the court held a hearing on the motion September 22, 1995. For the reasons set forth below, Commander's motion for class action certification will be denied and defendants' motion to strike will be granted in part.

*Factual Background*

On April 14, 1988, Commander filed the instant action individually, and on behalf of a class of others similarly situated, to recover alleged damages relating to the design of the wing structure of King Air aircraft models 90 and 100. "King Air" refers to a class of turbine-powered, propeller-driven, executive transport airplanes designed and manufactured by defendant Beech. The majority of King Airs are flown by professional pilots, rather than owner-pilots.

In its original complaint, Commander alleged, *inter alia*, that the wing structure was defective, not airworthy, did not conform to federal aviation regulations, and was in need of a substantial design modification. Because the Federal Aviation Administration ("FAA") has primary jurisdiction over aircraft certification and airworthiness and avia-tion safety standards, the court ordered Commander to pursue an administrative determination from the FAA regarding the airworthiness of the King Air models in question.

Commander filed a complaint with the FAA seeking a determination of whether the Beech wing design was defective and, if so, whether Commander's proposed wing modification would remedy the defective condition and make the aircraft airworthy. On July 2, 1991, and April 2, 1992, the FAA issued opinions on the issues raised in Commander's complaint. The April 2, 1992, FAA opinion dismissing Commander's complaint provided, in pertinent part, as follows:

> The Beech wing design is not defective in terms of its structural strength so long as the airworthiness directives (ADs) are complied with and the aircraft is flown within its approved flight envelope. . . .
>
> Over the life of the King Air aircraft the manufacturer has corrected problems such as stress corrosion of bolts, or manufacturing defects leading to cracking of Inconel nuts in the lower forward spar attachments, that might have had an effect on the integrity of the wing structure of each type of King Air. Some of these corrections have been made mandatory by the issuance of ADs by the FAA. None of the problems addressed by the manufacturer or by ADs are the result of inadequate design or strength testing of the wing structure.

Commander sought review of the FAA's dismissal of its complaint in the United States Court of Appeals for the District of Columbia Circuit. Commander argued that in determining that the aircraft were not "defective," the FAA exceeded its authority in that it rendered a judgment on Commander's common law claims. The court denied review, stating that the FAA decided only whether the aircraft was properly certified and, thus, airworthy. *Commander Properties, Inc. v. Federal Aviation Admin.,* 11 F.3d 204, 206 (D.C.Cir.1994) (as amended). The court said:

> In discussing the wing design, the FAA said not a word about the common law. Instead, the agency referred to its regula-

tions concerning testing for strength and load requirements and found that the aircraft was "airworthy" (complied with FAA standards), because the past problems had been corrected.

*Id.* In a footnote to that statement, the court also said:

The FAA referred to the aircraft's current status, not to problems arising after initial certification. The FAA ultimately concluded that the aircraft is not defective 'so long as Airworthiness Directives are complied with,' which presumably means that compliance with the Airworthiness Directives was necessary to bring the aircraft up to the FAA standards.

*Id.* at n. 3. The court concluded, "Whether Commander is correct that the Airworthiness Directives, increased inspections, and accident reports show that the wing design was 'defective' as a matter of tort law is not for us to say." *Id.* at 206.

Following the FAA and District of Columbia Circuit Court's action, defendants filed a motion to dismiss, urging that the FAA had determined that the wing design was not defective. Because the FAA determination did not speak to the status of the King Air aircraft post-manufacture and pre-modification (pursuant to FAA ADs), we held that the FAA determination did not resolve plaintiff's claims and denied defendants' motion to dismiss.

This brings us to the instant motion for class action certification by Commander. The claims presently pursued by Commander differ significantly from those originally brought. Commander now seeks to recover the cost of replacing the defective wing bolts, loss of use of the aircraft, and increased inspection costs. As has been true from the beginning, Commander does not claim any damages for personal injury as a result of the allegedly defective design.

Commander's present allegations are that Beech breached express state-of-the-art warranties and implied warranties of merchantability by selling the planes with the defective wing bolts and then failing and refusing to correct the problem. Further, Commander alleges that Beech was unjustly enriched in two ways: (1) by charging King Air owners to perform the inspections and repairs necessitated by the defective design and (2) if not by charging for its own work, by the amounts of money that members of the proposed class paid others to inspect and replace defective bolts, costs which should have been borne by Beech. Finally, Commander alleges that defendants committed fraud and RICO violations by misrepresenting the true safety status of the King Air models at issue in an effort to lull members of the proposed class into not asserting their warranty rights.

Based on these factual allegations, Commander is presently pursuing the following claims: (1) violations of the Racketeer Influenced & Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c) and (d)[1] against defendants Raytheon and Beech (Counts VI and VII respectively) (the only federal claim); (2) breach of express warranty against defendant Beech (Count I); (3) breach of implied warranty of merchantability against defendant Beech (Count II); (4) fraud, deceit, and misrepresentation against defendant Beech (Count IV); (5) unjust enrichment against defendant Beech (Count VIII); and (6) conspiracy to defraud against both defendants (Count XI).[2]

---

**1.** Despite the court's earlier order to the contrary, *Commander Prop. Corp. v. Beech Aircraft Corp.*, Civ. A. No. 88–2202–O, 1988 WL 139498 (D.Kan. December 19, 1988), Commander's complaint fails to state a claim under 18 U.S.C. § 1962(a) because it does not contain any factual allegations sufficient to allege injury caused by the defendants' use or investment of racketeering funds. *See Grider v. Texas Oil & Gas Corp.*, 868 F.2d 1147, 1149 (10th Cir.) *cert. denied*, 493 U.S. 820, 110 S.Ct. 76, 107 L.Ed.2d 43 (1989) (disapproving our decision in *Smith v. MCI Telecommunications Corp.*, 678 F.Supp. 823 (D.Kan.

1987), on which we relied in holding that Commander had stated a § 1962(a) claim).

**2.** Following the FAA's determination that the aircraft with the model numbers at issue are airworthy (after compliance with certain airworthiness directives ("ADs")), Commander has abandoned its other state law claims for negligence, strict liability, and failure to warn, and its claim under the Kansas Consumer Protection Act. *See* Linda Joseph Affidavit at 2–3 n. 1, attached to Commander's motion for class certification (Doc. # 225).

Commander's motion for certification describes the proposed class as follows:

All persons who are owners during the time period April 14, 1984 [3] to the present of aircraft manufactured by Defendant Beech Aircraft Corp. with the following model and serial numbers:

| MODELS | SERIAL NUMBERS |
|---|---|
| 65–90, 65–A90, B90 and C90 | LJ–1 through LJ–1062 |
| E90 | LW–1 through LW–347 |
| 100 and A100 | B–1 through B–247 |
| B100 | BE–2 through BE–137 |

Expressly excluded from the class are: (1) any King Air aircraft owned by Defendants or any of their affiliates; (2) any proposed class members who own King Air aircraft not subject to regulation by the Federal Aviation Administration; (3) any aircraft manufactured in 1986 or thereafter which utilize an integral attachment fitting; [4] (4) any aircraft purchased before January 1, 1975; and (5) any claims for personal injury damages.

Based on this definition, the "relevant ownership period" would be from June 8, 1981, to the present and the class would include any owner, whether of a new or used plane, within that period. The "relevant purchase period" would be from January 1, 1975, to 1986, when the wing structure design was changed.

*Discussion*

*Rule 23 Class Certification Standards*

Rule 23(a) provides for class action certification under the following requirements:

One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

These prerequisites for maintenance of a class action are commonly referred to as numerosity, commonality, typicality, and adequacy of representation. *In re United Telecommunications, Inc. Securities Litigation,* Civ. A. No. 90–2251–O, 1992 WL 309884, at *1 (D.Kan. September 15, 1992); *Smith v. MCI Telecommunications Corp.,* 124 F.R.D. 665, 674 (D.Kan.1989).

In addition, a proposed class action must fit within one of the categories described in Rule 23(b). *Smith v. MCI,* 124 F.R.D. at 674. In this case, Commander contends that the present action qualifies for class action treatment under Rule 23(b)(3), which provides as follows:

An action may be maintained as a class action if . . .

(3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

These Rule 23(b)(3) requirements are commonly referred to as predominance and superiority. *See Smith v. MCI,* 124 F.R.D. at 674.

■ The determination of class certification is committed to the broad discretion of the trial court. *Heartland Communications, Inc. v. Sprint Corp.,* 161 F.R.D. 111, 114 (D.Kan.1995) (citing *Anderson v. City of Albuquerque,* 690 F.2d 796, 799 (10th Cir. 1982)). The Tenth Circuit has stated, "if there is error to be made, let it be made in favor and not against the maintenance of the class action." *Esplin v. Hirschi,* 402 F.2d 94, 99 (10th Cir.1968), *cert. denied,* 394 U.S. 928, 89 S.Ct. 1194, 22 L.Ed.2d 459 (1969). However, this statement is not to be read to unduly limit the discretion of the trial judge in deciding whether to certify a class because discretion may well be the "key to a realistic

---

**3.** Commander indicates that this date is in error and should have been June 8, 1981. (Reply Mem. of Law in Support of Pltf's Motion for Class Cert. at 19 n. 9 (June 12, 1995) (Doc. # 237)).

**4.** In 1986, Beech changed the design of the wing structure of the King Air 90 and 100 Series with respect to the wing attachment fitting.

administration of Rule 23 particularly with respect to a determination of the most fair and efficient procedure." *Wilcox v. Commerce Bk. of Kansas City,* 474 F.2d 336, 344 (10th Cir.1973).

■ A motion for class action certification requires the court to perform a "rigorous analysis" of whether the proposed class action satisfies the requirements of Rule 23. *Id.* In determining whether a class should be certified, the court must not delve into the merits of the action. *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 177–78, 94 S.Ct. 2140, 2152–53, 40 L.Ed.2d 732 (1974). Nonetheless, the court often must, to some extent, analyze the elements of the claims and defenses of the parties. *Smith v. MCI,* 124 F.R.D. at 674.

■ The burden of proof is always on the party seeking class action certification to demonstrate, under a strict burden of proof, that the suit should proceed as a class action. *Rex v. Owens,* 585 F.2d 432, 435 (10th Cir. 1978).

Local rules impose additional requirements on motions for class certification. District of Kansas Rule 23.1(a)(2)(A) requires the definition of the proposed class to be included in the complaint. Rule 23.1(d) places the burden of proof on the party seeking certification to "present an evidentiary basis to the court showing that the action is properly maintainable as such."

### Class Definition

The class definition is "of critical importance because it identifies the persons (1) entitled to relief, (2) bound by the judgment, and (3) entitled to notice in a Rule 23(b)(3) action." Manual for Complex Litigation, Third § 30.14 (1995); *see also McHan v. Grandbouche,* 99 F.R.D. 260, 265 (D.Kan. 1983). Greater precision is required in defin-

ing a class when compensatory relief is sought, rather than injunctive or declaratory relief. *McHan,* 99 F.R.D. at 265.

Commander seeks certification of a class which is different than that defined in its Supplemental Third Amended Complaint and, indeed, different than the class defined in its motion for class certification. In its motion for class certification, Commander narrowed the proposed class by categorically excluding certain aircraft, i.e., aircraft owned by defendants, aircraft manufactured after 1986, and aircraft purchased before January 1, 1975, and by expressly excluding all claims for personal injuries. Most recently, at the hearing, Commander's counsel sought to narrow the class definition even further by limiting it to original purchasers from Beech who incurred expenses in association with the defective wing bolts.

Not surprisingly, defendants complain that they do not understand Commander's class definition. They raise numerous arguments against certification of a class as defined in Commander's motion for class certification. Primarily, they argue that under that class definition, every owner in the chain of title of a given plane would be included, which will require a search of the chain of title for each plane to determine membership in the class.[5] Defendants emphasize that this creates significant problems in managing this matter as a class action and raises serious concerns about Commander's ability to adequately provide notice to the class as required by Rule 23(c)(2). They raise numerous individual questions which they claim will predominate over questions common to the class and argue that certification of such a class is not the superior method with which to proceed. We agree.

Class certification is definitely not appropriate for a class which includes all owners in the chain of title.[6] Many of the same barri-

---

5. Beech asserts that 72% of the currently-registered aircraft listed by serial number in Commander's Memorandum in Support of its motion for class certification have been resold at least one time during the last six years. (Defs' Mem. in Opp. to Pltf's Motion for Class Cert. at 34, n. 9 (Doc. # 231)).

6. In Commander's reply on its motion for class certification, Commander also refers to a class of only those who owned the relevant model King Air aircraft *both* when the first AD was issued *and* when the defendants' alleged misrepresentations were sent out. (Reply Mem. of Law in Support of Pltf's Motion for Class Cert. at 79 (June 12, 1995) (Doc. # 237)). However, it appears that this proposed class could also include

ers to certification discussed below would exist with respect to a class which includes all owners in the chain of title for a given plane. In addition, a class which includes every owner in the chain of title presents serious management problems because it would require a search of the title of each plane to determine membership in the class so that notice under Rule 23(c)(2) could be served.

One of the major difficulties with Commander's motion for class certification is Commander's ever-changing class definition. Commander has simply failed to coherently define and present evidence justifying certification of a specific class. However, in recognition and consideration of the court's power under Rule 23(c)(4) to allow class treatment for only some issues or divide the original class into subclasses, we will analyze certification of the narrower class suggested by Commander at the hearing, i.e., a class of only original purchasers from Beech.

### Numerosity and the Impracticability of Joinder

■ To establish numerosity under Federal Rule of Civil Procedure 23(a), the class must be of such a size that "joinder of all members is impracticable." " 'Impracticable does not mean impossible.' " *Stambaugh v. Kansas Dept. of Corrections,* 151 F.R.D. 664, 673 (D.Kan.1993) (quoting *Robidoux v. Celani,* 987 F.2d 931, 935 (2d Cir.1993)). To obtain certification, Commander is not required to prove the identity of each class member or the specific number of members. *Id.* Numerosity and practicability of joinder are not determined simply by the number of potential class members, but depend on factors like the practical viability of individual suits in terms of inconvenience, inefficiency and the size of the individual claims, requests for injunctive or declaratory relief, and the location and distribution of class members. *Id.*

■ Although Commander appears to have met the numerosity requirement with respect to the class defined in its motion, Commander has wholly failed to carry its

plane owners who purchased used planes and

burden to show numerosity with respect to the narrower class of original purchasers who owned aircraft at the relevant times. Commander has not presented any evidence regarding the number of *original* owners who allegedly incurred damages relating to the wing bolt problem. The present record does not establish how many potential class members would be involved in such a definition, or the practicality of their joinder in the instant action. However, even if we assume that Commander could present an evidentiary basis for certification under the numerosity requirement with respect to a class of original owners, Commander's certification motion would still fail because of other Rule 23 requirements.

### Typicality and Adequacy of Representation

■ The claims of the class representative must be typical of those of the putative class. Rule 23(a)(3). This requires the class representative to be a member of the proposed class, have interests coextensive with and not antagonistic to the interests of the class, and have suffered the same injury as the class members. *See, e.g., General Telephone Co. v. Falcon,* 457 U.S. 147, 156, 102 S.Ct. 2364, 2369–70, 72 L.Ed.2d 740 (1982); *Eisen v. Carlisle,* 391 F.2d at 562–63 (discussing coextensive interests); *Edgington v. R.G. Dickinson & Co.,* 139 F.R.D. 183, 189 (D.Kan.1991). Claims do not have to be identical to be typical. *Adamson v. Bowen,* 855 F.2d 668, 676 (10th Cir.1988); *Olenhouse v. Commodity Credit Corp.,* 136 F.R.D. 672, 679 (D.Kan.1991). A representative's claims may differ factually and still be typical if they arise from the same events or course of conduct and share the. same remedial theories. *Adamson,* 855 F.2d at 676.

The typicality requirement dovetails with the Rule 23(a)(4) adequacy of representation requirement. *See Penn v. San Juan Hosp., Inc.,* 528 F.2d 1181, 1189 (10th Cir.1975). Atypical claims potentially create antagonistic interests, which will presumably affect Commander's ability to adequately represent the class.

did not buy directly from Beech.

Under Rule 23(a)(4), Commander must establish that it can "fairly and adequately protect the interests of the class." Adequacy of representation is measured by two factors: (1) whether class counsel are qualified, experienced, and generally able to conduct the proposed litigation; and (2) whether the plaintiff has interests antagonistic to those of the class. *Smith v. MCI*, 124 F.R.D. at 676. We must give particular concern to the adequacy of representation because, unless a class member disassociates from the class (primarily, by opting out of the class), a judgment conclusively determines the rights of absent class members. *See Eisen*, 391 F.2d at 562–63.

Defendants contend that Commander's claims are not typical of the class claims because: (1) Commander is subject to unique defenses; (2) Commander, through its President Sidney Lassen, is the only plane owner to have demanded that its King Air be replaced by Beech (at no cost to Commander) in compensation for the wing bolt problem and to have threatened to file a class action lawsuit if the replacement demand was not met; (3) Commander installed the wing spar on its aircraft; and (4) Commander enrolled in Beech's warranty program and filed warranty claims for the wing bolt replacement on its King Air.

Defendants raise numerous defenses, which they claim are unique to Commander. Most notably, they argue that Commander's claims are barred by the statute of limitations because Commander, through its President Sidney Lassen, wrote a letter dated June 17, 1982, wherein Lassen stated, "We have experienced this past year tremendous expense and inconvenience due to numerous S.I.'s [safety inspections], particularly the wing episode." In addition, Commander concedes that it received the June 8, 1981, safety communique, which the court notes discussed the wing problem in detail. However, Lassen claims not to have understood some of the technical terms of the communique.

Beech urges that the safety communique fully and accurately disclosed the wing bolt problem and, thus, triggered the statute of limitations. Commander's position is that the safety communique was false and was issued in an effort to lull class members into not asserting their warranty rights. Accordingly, Commander asserts that the statute of limitations should be tolled either under the doctrine of equitable tolling or the doctrine of fraudulent concealment.

Defendants also argue that Commander is uniquely situated with regard to the statute of limitations issue because of its June 17, 1982, letter. Defendants urge that, even if the statute of limitations did not run from the date of the safety communique, Commander's letter establishes Commander's knowledge of the wing problem and represents the date from which Commander could have reasonably discovered its claims relating to the problem. Defendants, therefore, argue that the statute of limitations began to run on Commander's claims at least as of June 1982. For similar reasons, the letter would also bear on Commander's reasonable reliance, an element of its fraud and misrepresentation claims. We need not assess the ultimate ramifications of Commander's letter at this juncture. Rather, we simply note the letter as one of several facts which set Commander apart from the class.

In addition to the letter, Commander is potentially different from the majority of the class in that Commander enrolled in Beech's wing warranty program [7] and installed a wing spar strap on its King Air.[8] Commander stresses that it is not presently pursuing any claims directly relating to the warranty program or installation of the wing spar strap. Absent a claim for the cost of the installation, at this time we do not perceive a certification difficulty relating to Commander's installation of the wing spar strap.

However, Commander's participation in the warranty program raises potential problems in that it affects the coextensiveness of Commander's claims with the claims of class

---

**7.** We note that, according to Beech, only 40% of the eligible King Airs were enrolled in the Beech wing warranty program.

**8.** Beech submits that only 62 King Airs in the entire fleet of over 4,000 planes have had this device installed.

members who did not enroll in the warranty program. Commander filed a warranty claim for the replacement of the wing bolts on its King Air aircraft. Thus, Commander's ability to recover the replacement costs under its breach of warranty claim is significantly weaker than other potential class members who did not receive warranty reimbursement. In addition, in entering into the warranty program, Commander agreed to have its plane inspected as required by Beech and the FAA. Accordingly, Commander is in a weaker position to pursue a claim for the expenses associated with such inspections than is a plane owner who did not agree to have the inspections performed in exchange for the benefit conferred by participation in Beech's warranty program.

Under these circumstances, the typicality and adequacy of representation requirements seem to weigh against certification of this matter. If Beech prevails based on the facts unique to Commander, i.e., the June 17, 1982, letter; membership in the warranty program; and installation of the wing spar strap, absent class members, who are possibly in a factually better position than Commander on some aspect of a particular claim, would be bound by an adverse judgment without having received adequate representation. Although it is true that such class members could opt out to avoid this result,[9] the very realistic possibility that substantial numbers of the class might opt out weighs against certification because, in that event, maintenance of the class action would not achieve "the efficiency and economy of litigation which is a principal purpose of the [class action] procedure." *American Pipe & Construction Co. v. Utah,* 414 U.S. 538, 553, 94 S.Ct. 756, 766, 38 L.Ed.2d 713 (1974).

 We recognize that courts have held that factual differences will generally not defeat a finding of typicality. Despite factual variations, a class representative's claim is typical if it "arises from the same event or practice or course of conduct that gives rise to the claims of other class members," or if it is "based on the same legal theory." 1 Herbert Newberg, Newberg on

Class Actions § 3.13 at 3–76 (3d ed. 1992); *Adamson v. Bowen,* 855 F.2d at 676. Even where the class representative's claim may be questionable due to a statute of limitations or lack of reliance defense, typicality may be found if the claim itself is based on the same event or legal theory as the class claims. *See* Newburg on Class Actions § 3.16 (citing numerous, primarily securities fraud, cases holding that unique reliance and statute of limitations defenses do not defeat typicality).

Admittedly, the factual differences present here do not render Commander's claims directly antagonistic to the claims of the class, but simply more narrow than the class claims. In *Adamson,* 855 F.2d at 676, the court stated that if final resolution of a named plaintiff's claims makes them no longer typical, the court can consider intervention by another class member to continue the case. Certainly, subclasses, subgroups, and opt-out rights can be used to address typicality difficulties. *See* 1 Newberg on Class Actions, §§ 3.30, 3.31; *Breedlove v. Tele-Trip Co.,* No. 91 C 5702, 1993 WL 284327 at *8 (N.D.Ill. July 27, 1993). These considerations make the deficiencies in the typicality of Commander's claims less of a concern.

However, we also question the adequacy of representation in the instant case for other reasons. Although defendants' allegations regarding the competency of class counsel and Commander as a class representative probably go too far, we question whether, given the chameleonic nature of this case, class counsel's prosecution of this action has been and is properly focused.

In sum, we are not required to reach an ultimate determination of whether Commander has met the typicality and adequacy of representation requirements. Even if we were satisfied that the typicality and adequacy of representation had been met in this case, other considerations under Rule 23(b)(3) preclude certification of this matter.

*Commonality*

 Rule 23(a)(2) requires Commander to establish the existence of questions of law

9. Certification is sought under Rule 23(b)(3), which requires that class members be given no-

tice and an opportunity to opt out of the class. *See* Fed.R.Civ.P. 23(c)(2).

or fact which are common among the proposed class members. This Rule 23(a)(2) requirement is "substantially less rigorous than Rule 23(b)(3)." *Sunbird Air Servs. v. Beech Aircraft Corp.*, No. 89–2181, 1992 WL 193661, at *3 (D.Kan. July 15, 1992). Under the Rule 23(a)(2) commonality requirement, common questions either of fact or law are sufficient. However, under Rule 23(b)(3), common issues must predominate over individual issues. *See generally* 7A Charles A. Wright, Arthur R. Miller, & Mary Kay Kane, *Federal Practice and Procedure* § 1763 (2d ed. 1986).

Commander has met the liberal Rule 23(a)(2) commonality requirement in this case. Several common issues exist with respect the narrowly defined class of original purchasers from Beech on, among others, the following issues: (1) the viability of a breach of express warranty claim under the language of the warranty provisions of uniform sales contracts, (2) whether the wing structure was state of the art when sold, (3) whether defendants misrepresented the true safety status of the King Air models at issue, and (4) whether defendants' actions constitute violations of RICO, 18 U.S.C. § 1962(c) and (d).

### Predominance of Common Questions of Law and Fact

■ The real impediment to certification under any class definition suggested by Commander lies in the Rule 23(b)(3) predominance and superiority requirements. In determining whether the predominance standard is met, courts focus on the issue of liability. *Gold Strike Stamp Co. v. Christensen*, 436 F.2d 791, 796 (10th Cir.1970); *United Telecommunications Sec. Lit.*, 1992 WL 309884, at *3. If the liability issue is common to the class, common questions are held to predominate over individual ones.

■ Even under the narrowest class definition of only original purchasers from Beech, certification is not appropriate. Various individual questions predominate with regard to claims for breach of warranty, unjust enrichment, fraud, misrepresentation, and RICO violations. In addition, individual choice of law questions predominate with regard to the state law claims.

Before we proceed to an analysis of each of the various claims under the predominance requirement, it is important to note that Commander is no longer asserting claims based on any oral statements or representations. Rather, Commander has narrowed its stance and relies only on alleged misrepresentations which were written and, thus, are uniform among class members.

With regard to the breach of warranty claims, Beech argues that individual questions of law predominate with respect to the viability of warranty claims and statute of limitations defenses. Beech asserts that different sales contract forms were used between 1975 and 1986, the *relevant purchase period* in the class definition. Defendants maintain that the circumstances and contract forms during the relevant period may vary. Thus, an individual examination of each contract will be required to determine whether a particular plaintiff was in privity with Beech and can state a breach of warranty claim.

Commander asserts that all of the sales contract forms are substantially similar.[10] However, as is discussed below, even if we assume that the form contracts submitted by Commander are the only forms used and, thus, are uniform among class members, individual factual questions would still predominate.

The privity of contract issue raised by Beech is effectively eliminated under Commander's narrowed class definition of only original purchasers. However, individual statute of limitations issues preclude certifi-

---

**10.** In support, Commander offers copies of several very similar form sales contracts and urges that, because defendants have not submitted even one substantially different form contract, no such contracts actually exist. At the hearing, defendants indicated that they have not submitted any substantially different contract forms because they cannot determine who is in the class and, therefore, cannot determine the relevance of a particular contract. Notwithstanding the possible relevance problems caused by Commander's evolving class definition, bald statements that the contracts at issue are different is not sufficient to preclude certification. *Heartland Communications, Inc. v. Sprint Corp.*, 161 F.R.D. 111, 116 (D.Kan.1995).

cation of the breach of warranty claims. Absent a shorter contractual limitations period, a breach of warranty claim must be brought in Kansas within four years. *See* Kan.Stat. Ann. § 84–2–725 (Supp.1994). Commander first asserts that the 180–day limitation in the sales contract forms is unconscionable because the wing defect was latent. However, a determination of unconscionability would necessitate individual inquiries into numerous factual considerations, such as the relative financial strength of the parties, inequality of bargaining power, and the circumstances surrounding the execution of the contract. *See Hawes v. Kansas Farm Bureau*, 238 Kan. 404, 406, 710 P.2d 1312, 1314 (1985) (discussing the factors that are relevant to a determination of whether the doctrine of unconscionability applies).

Commander also urges that the four-year statute of limitations for breach of warranty claims, Kan.Stat.Ann. § 84–2–725, should be equitably tolled because Beech's alleged fraud and misrepresentation "lulled" class members into not asserting their warranty rights within the limitations period. However, a determination of whether the doctrine of equitable tolling or fraudulent concealment can be invoked by a particular plaintiff requires individual inquiries into Beech's conduct with regard to that plaintiff. Even assuming uniform misrepresentations by Beech, individual inquiries remain as to when a particular plaintiff reasonably could have discovered a breach of warranty cause of action.

■ Individual reliance is a required element of a RICO claim under 18 U.S.C. § 1964(c). *See Strain v. Nutri/System, Inc.*, Civ. A. No. 90–2772, 1990 WL 209325 (E.D.Pa. December 12, 1990). "Any person injured in his business or property by reason of a violation of section 1962" may bring a private damage suit under RICO, 18 U.S.C. § 1964(c). *Sedima, SPRL v. Imrex Co.*, 473 U.S. 479, 495, 105 S.Ct. 3275, 3284, 87 L.Ed.2d 346 (1985). A RICO violation is "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Id.* at 496, 105 S.Ct. at 3285. "Racketeering activity" is the commission of a "predicate act," which includes mail fraud indictable pursuant

to 18 U.S.C. § 1341. *See id.* at 495, 105 S.Ct. at 3284; 18 U.S.C. § 1961(1). The "by reason of" language imposes a proximate cause requirement on a RICO plaintiff. *See Haroco Inc. v. American Nat'l Bk. & Trust*, 747 F.2d 384, 398 (7th Cir.), *aff'd*, 473 U.S. 606, 105 S.Ct. 3291, 87 L.Ed.2d 437 (1984). To recover in a civil action for damages under RICO, private plaintiffs must establish: (1) a violation of section 1962; (2) an injury to their business or property; and (3) the requisite causal connection between the injury and the violation of section 1962. *See Brandenburg v. Seidel*, 859 F.2d 1179, 1187 (4th Cir. 1988); *Nodine v. Textron, Inc.*, 819 F.2d 347, 348 (1st Cir.1987); *Smith v. MCI*, 124 F.R.D. at 676–77.

■ Similarly, a fraud claim under Kansas law requires proof of reliance and causation. Kansas courts have, to some extent, vacillated on the elements of common law fraud. *See Smith v. MCI Telecommunications Corp.*, 678 F.Supp. 823, 830 (D.Kan. 1987) (discussing the varying pronouncements of Kansas courts). However, under the weight of authority, the elements of fraud in Kansas are: (1) an untrue statement of fact; (2) known by the defendant to be untrue; (3) made by defendant with the intent to deceive or with reckless disregard for the truth of the statement; (4) reliance on the statement by the plaintiff; and (5) resulting injury to the plaintiff. *See Smith v. MCI*, 124 F.R.D. at 676–77 (discussing the elements of a fraud claim in Kansas and citing numerous cases in support).

Defendants urge that both the RICO and common law fraud claims involve predominantly individual questions regarding reasonable reliance and causation. We agree. Commander's argument that reliance and causation present common questions because the class is, by definition, limited to those who acted in reliance on defendants' misrepresentations, presumes too much. First, the class definition in Commander's motion for class certification does not contain any such limitation. Second, restricting the class in such a manner will not eliminate necessary individual inquiries about whether a particular plane owner reasonably relied and suffered damages as a result.

Significantly, this case differs factually from *Smith v. MCI*, 124 F.R.D. 665, because the members of the class in *Smith* were similarly situated in that they were all employed by MCI under similar contracts requiring the payment of commissions for sales. The *Smith* plaintiffs alleged that MCI had defrauded them by systematically entering misinformation into its computer systems. *Id.* at 677–78. Thus, in finding reliance questions were not individualized, the court found it "implausible that, in initiating or continuing their employment with MCI, the salespersons did not rely on the commissions plans which they were required to sign." *Id.* at 679. In other words, reliance was established by the plaintiff's actions in becoming or remaining employed under the commission plan.

No such common circumstances evidencing reliance exist in the instant case. There is no evidence that all potential class members took a similar action in reliance on the alleged misrepresentations of defendants. Indeed, Beech asserts that the plane owner's actions with regard to the wing bolt problem varied widely, from a simple inspection and replacement of the bolt, to installation of the wing spar strap. Beech also asserts that the inspection requirements affected various plane owners differently. It simply cannot be said that by their mere ownership, the class members have established reliance and a resulting injury. Individual inquiries are required to establish these essential elements of the fraud and RICO claims. For like reasons, individual questions predominate on the conspiracy claim, as well.

■ The claims for unjust enrichment against defendant Beech also involve significant individual inquiries. To maintain a claim for unjust enrichment, a particular plaintiff must establish that Beech was unjustly enriched at its expense. *See Tongish v. Thomas,* 251 Kan. 728, 735, 840 P.2d 471, 476 (1992).

Commander's unjust enrichment claim apparently rests on two theories: (1) that Beech was unjustly enriched by collecting funds for the additional inspections and repairs/maintenance (i.e., class members paid Beech to perform the additional inspections and repairs); and (2) even if the inspections and repairs were performed by an authorized repair facility other than Beech, Beech was unjustly enriched because the proposed class members paid inspection and repair costs, which should have been paid by Beech.

Beech argues that individual factual questions predominate with respect to the inspection/repair work actually performed on each plane and whether Beech benefitted from it. Commander counters that, while there might be individual questions with respect to each individual plaintiff's damage amount, the question of liability is uniform among all potential plaintiffs. Commander urges certification as to liability and then having each plaintiff submit proof of individual damages. Further, Commander argues that its second theory of unjust enrichment, which is focused on the savings achieved by Beech not having to pay for the inspections and repairs, is uniform among plaintiffs.

Commander's arguments are without an evidentiary foundation. Commander has not presented evidence to establish that the question of liability is uniform among all members of the proposed class. Indeed, under either unjust enrichment theory, there are individual questions with regard to whether additional inspections or repairs were necessary, whether they were performed by Beech, and whether Beech had any obligation to pay the expenses for a particular plaintiff. Even if it could be said that Commander's general theory of liability for unjust enrichment, (i.e., that Beech was unjustly enriched when class members paid expenses Beech should have paid), is uniform among class members, individual questions remain about whether a particular plane owner actually incurred any such expenses.

It appears from the record that the majority of the planes at issue were resold at some point. An original purchaser, who resold the plane before incurring any expense related to the wing bolt problem, could not maintain an unjust enrichment claim. Thus, Beech's liability for unjust enrichment to a particular plaintiff depends on the factual circumstances of the particular plane at issue. This individual inquiry presents more than a simple question of whether a particular plaintiff

can prove damages. Indeed, it bears directly on the question of Beech's liability for unjust enrichment to a particular plaintiff.

### Individual Choice of Law Questions

In addition, individual choice of law issues predominate with respect to several of the asserted state law claims. Kansas choice of law rules govern choice of law determinations for the state law claims. *Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 496, 61 S.Ct. 1020, 1021–22, 85 L.Ed. 1477 (1941); *Loveridge v. Dreagoux,* 678 F.2d 870, 877 (10th Cir.1982).

Without deciding the issue, it appears that Kansas law governs claims for breach of warranty claims. The form sales contracts contain a choice of law provision which designates that Kansas law governs and Kansas bears a reasonable relation to the sale of the planes. *See* Kan.Stat.Ann. § 84–1–105 (the parties may agree to the governing law in a contract for the sale of goods, so long as it bears a reasonable relation to the transaction). Thus, we see no certification problem with regard to the warranty claims on choice of law grounds.

The law of the state where the class member received the allegedly fraudulent misrepresentation governs the fraud claims. Commander does not dispute that the alleged misrepresentations were received in various states and that individual inquiries into the laws governing fraud in each state will be required. *See Sunbird Air Servs. v. Beech Aircraft Corp.,* No. 89–2181, 1992 WL 193661, at *5–7 (D.Kan. July 15, 1992). Commander asserts, however, that *Sunbird* was improperly decided because the court did not consider whether the laws differed significantly or would impact the outcome of the case. *See In re Energy Systems Equipment Leasing Securities Litigation,* 642 F.Supp. 718, 753 (E.D.N.Y.1986) (holding that there was no evidence that "variations in the jurisprudence of fraud … [among the governing state laws] outweigh[ed] the commonality of legal and factual issues otherwise present in the litigation"). Commander urges that defendants have not established that the elements of fraud will differ between the various states.

Commander's argument misses the point. First, we know of no precedent requiring defendants to establish that a choice of law inquiry is outcome determinative. Indeed, the burden is not on defendants to establish anything with respect to the instant motion for certification. Second, even if it is true that the laws of the various states governing fraud are substantively similar, that will still require the court to examine the laws of each state to reach that determination. It is this need to individually examine the laws of numerous states which makes certification unacceptable.

Individual choice of law questions arise with regard to the unjust enrichment claims as well. The court applies the law of the state with the most significant contacts in light of: (1) the place where the benefit or enrichment was performed, (2) the domicile or residence of the parties, and (3) the location of the aircraft at the time of the act conferring the benefit or enrichment. Based on the present record, it appears that this analysis will inevitably involve the law of several different states.

Finally, because the RICO claim does not involve individual choice of law inquiries, Commander urges the court to exercise supplemental jurisdiction and accept the state law claims for class action treatment. We decline the invitation because we believe that the significant number of individual inquiries required by the various state law claims make them ill-suited for class action treatment.

### Superiority

Rule 23(b)(3) also requires that the class action be "superior to other available methods for the fair and efficient adjudication of the controversy." The court finds that a class action is not the superior method with which to proceed in this case. Any class definition which includes all purchasers in the chain of title presents significant notice problems. Further, any definition limited to original purchasers still presents significant and predominant individual issues.

In addition, defendants assert that the $750,000 and up purchase price for King Airs

shows that individual plane owners have the financial resources to vindicate their rights. Commander responds that the average claim per plaintiff is only between $10,000 and $20,000. Thus, Commander argues that, notwithstanding the financial resources of class members, the potential recovery does not justify the expense of instituting such a complicated suit as an individual.

Class action is not the only practical available method to vindicate the rights of potential class members in this case. It appears from the purchase price of the planes at issue that individual plaintiffs are financially able to pursue independent litigation. In addition, some of the traditional barriers to the pursuit of relatively small individual claims are removed by the availability of offensive collateral estoppel and attorney's fees under RICO, 18 U.S.C. § 1964(c). As the court in *Curley v. Cumberland Farms Dairy, Inc.,* 728 F.Supp. 1123, 1133–34 (D.N.J.1990) noted, collateral estoppel presents a reasonable alternative to class certification where the defendants will be collaterally estopped from relitigating issues that are common to the class, especially on a RICO claim where the attorney's fees are shifted to the defendant. *See also Katz v. Carte Blanche Corp.,* 496 F.2d 747, 758–763 (3d Cir.), *cert. denied,* 419 U.S. 885, 95 S.Ct. 152, 42 L.Ed.2d 125 (1974) (discussing the use of a "test case" as an alternative to class certification); *Yeager's Fuel, Inc. v. Pennsylvania Power & Light Co.,* 162 F.R.D. 482, 488–89 (E.D.Pa.1995); *Yanai v. Frito Lay, Inc.,* 61 F.R.D. 349, 353 (N.D.Ohio 1973).

In conclusion, we acknowledge that numerous arguments by defendants are directed at the merits of Commander's claims, rather than the Rule 23 requirements. For the record, we note that we have not considered the merits of Commander's claims in deciding the instant motion, but have looked only to the Rule 23 requirements. After thoughtful review of all the relevant considerations, we are convinced that certification under Rule 23(b)(3) should be denied. In short, a class action simply is not the superior method with which to proceed in the instant suit.

*Defendants' Motion to Strike*

Defendants' related motion to strike will be granted in part. Class counsel's affidavit contains in depth statements about nearly every element relevant to the certification motion, some of which are not based on personal knowledge. *See* Fed.R.Civ.P. 56(e). Although the relevant portions of the affidavits which are based on personal knowledge may stand, all portions of the affidavits not based on personal knowledge have been disregarded by the court and cannot be utilized or referred to in any subsequent motions or responses in this matter.

IT IS THEREFORE ORDERED that Commander's motion for class certification (Doc. # 225) is denied.

IT IS FURTHER ORDERED that defendants' motion to strike (Doc. # 234) is granted in part as set forth herein.

IT IS FURTHER ORDERED that this matter is hereby referred to Magistrate Judge Rushfelt for further pretrial proceedings.