**APARTMENT INVESTMENT AND MANAGEMENT COMPANY, Appellant,**

v.

**SUGGS & ASSOCIATES, P.C., Both Individually and on Behalf of all Others Similarly Situated, Appellees.**

No. 05–03–00276–CV.

Court of Appeals of Texas, Dallas.

Feb. 26, 2004.

Rehearing Overruled April 1, 2004.

Eric W. Buether, Eric Sean Tautfest, Godwin Gruber L.L.P., Todd Benjamin Stoller, McKool Smith, P.C., Dallas, for Appellant.

Keith M. Jensen, Law Office of Keith M. Jensen, P.C., John W. MacPete, MacPete Law Firm, Fort Worth, for Appellees.

Before Justices MOSELEY, FITZGERALD, and LANG.

## OPINION

Opinion by Justice LANG.

This is an interlocutory appeal from an order granting class certification. This

case arises from allegations that Suggs & Associates, P.C. (Suggs) received unsolicited telecopy or fax advertisements from American Blast Fax, Inc. (ABF) advertising properties owned or managed by Apartment Investment and Management Company (AIMCO), in violation of the Telephone Consumer Protection Act, 47 U.S.C.A. § 227 (West 2001) (TCPA). Suggs sought statutory damages and requested that the trial court certify the lawsuit as a class action.[1] The trial court certified a class under Texas Rule of Civil Procedure 42(b)(2) and (b)(4). AIMCO appeals that certification order in ten issues. Because we conclude that the trial court abused its discretion by certifying a class that is not properly defined, we reverse the order granting class certification and remand this case for further proceedings.

### FACTUAL AND PROCEDURAL BACKGROUND

Suggs is a law firm in Dallas. AIMCO is incorporated in Maryland and is a real estate investment trust engaged, indirectly through subsidiaries and partnerships, in the ownership and management of apartment properties. Some of those properties are located in the Dallas–Fort Worth area. In December 2000 and January 2001, AIMCO entered into agreements with ABF to send fax advertising regarding AIMCO's properties to fax reception devices in the Dallas–Fort Worth area. During that time period, ABF sent over 112,000 faxes which advertised AIMCO's properties. ABF maintained "daily fax confirmation logs" that show the telephone numbers to which ABF sent these faxes. Suggs alleged that it received three of these faxes.

Following a hearing, the trial court signed an order which certified the following claims and class: "the TCPA claims of the holders of the telephone numbers on the date they are confirmed to have received AIMCO's fax ads as confirmed by the American Blast Fax daily fax confirmation logs." The order states that, if the class prevails at trial on the merits, "class members can submit proofs of claim establishing they held such a number on the day or days ABF"s records show the AIMCO faxes were received in 2000 and 2001." The order further states that the class "as defined is precise and presently ascertainable by reference to objective criteria; to wit, a number on the ABF confirmation logs which correspond to AIMCO's fax ads." In the order, the trial court concluded "that it is not necessary to be able to identify the names and addresses of the class members at the time of certification to define a class for which membership or lack of membership is presently ascertainable by reference to objective criteria." Moreover, the order provides that, if AIMCO prevails, its res judicata rights would be protected because an injunction would require subsequent claimants to substantiate the fax number they held on the date they claim to have received the fax. The trial court's order found that the requirements of Texas Rule of Civil Procedure 42(b)(2) and (b)(4) were met.

### STANDARD OF REVIEW

On appeal, we determine whether a· trial court abused its discretion in deciding whether to grant or deny class certification. *Kondos v. Lincoln Prop. Co.*, 110 S.W.3d 716, 720 (Tex.App.-Dallas 2003, no pet.). A trial court abuses its discretion when it: (1) acts arbitrarily or unreasonably; (2) does not properly apply the law to the undisputed facts; or (3)

---

1. American Blast Fax, Inc. was also named as a defendant, but was not served and has not

appeared in the suit.

rules on factual assertions not supported by the record. *Id.* The supreme court has rejected what it described as a "certify now and worry later" philosophy towards class certification. *Id.* (citing *S.W. Ref. Co. v. Bernal,* 22 S.W.3d 425, 435 (Tex. 2000)). Consequently, actual, not presumed, compliance with rule of civil procedure 42 is required when a trial court decides to certify a class action. *Id.; Bernal,* 22 S.W.3d at 435 (citation omitted); *see* TEX.R. CIV. P. 42.

### APPLICABLE LAW

The TCPA makes it unlawful for any person in the United States "to use any telephone facsimile machine, computer, or other device to send an unsolicited advertisement to a telephone facsimile machine." 47 U.S.C.A. § 227(b)(1). "The term 'unsolicited advertisement' means any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's prior express invitation or permission." *Id.* § 227(a)(4). The TCPA provides a private right of action for a violation of the statute to enjoin violations and to recover the actual monetary loss from a violation or $500 in damages for each violation, whichever is greater. *Id.* § 227(b)(3).

### CLASS DEFINITION

In issues one and three, AIMCO contends the trial court abused its discretion in granting class certification because the class is not sufficiently defined. Specifically, AIMCO argues that it is not administratively feasible for a court to determine whether a particular individual is a member of the class. Because the class definition is not sufficient, we conclude the trial court abused its discretion. Accordingly, AIMCO's first and third issues are re-

solved in its favor. We need not address the other issues.

### *Applicable Law*

■■■ The threshold inquiry in determining class certification must be into the class definition, i.e., the parameters of the proposed class. *Intratex Gas Co. v. Beeson,* 22 S.W.3d 398, 403 (Tex.2000). Rule 42 implicitly requires the representative plaintiffs to demonstrate not only that an identifiable class exists, but that it is susceptible to precise definition. *Id.; see De-Bremaecker v. Short,* 433 F.2d 733, 734 (5th Cir.1970) (per curiam) (holding that it is "elementary that in order to maintain a class action, the class sought to be represented must be adequately defined and clearly ascertainable"); 5 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE ¶¶ 23.20–.21 (3d ed.2003).

Before a reviewing court can consider a putative class's compliance with rule 42(a) and (b) class certification requirements, it must first consider the appropriateness of the certified class definition. *Beeson,* 22 S.W.3d at 403. In fact, absent a cognizable class, evaluating whether the putative class representatives satisfy the rule 42(a) and (b) requirements would be impossible. *Id.* A properly defined class is imperative for a suit to proceed as a class action because the class definition facilitates identifying, at the outset, the individuals affected by the litigation, and protects their interests. *Id.*

A class definition: (1) determines who is entitled to notice and, for class actions maintained under rule 42(b)(4), provides an opportunity to opt out of the class; (2) determines the nature of relief that can be awarded and who is entitled to that relief; and (3) identifies the plaintiffs who will be bound by the judgment if they lose and insures that those actually harmed by the defendant's wrongful conduct will receive

the relief ultimately awarded. *Id.; see* MANUAL FOR COMPLEX LITIGATION (THIRD) § 30.14 (1995).

■ The sufficiency of a definition of a class rests upon, in part, and is intertwined with, the notice the court is to direct to each class member. *See Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 173–76, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974). Such notice, particularly in class actions maintained under rule 42(b)(4), must state that the class member has the right to exclude himself from the action on request or to enter an appearance through counsel. *See id.* at 173, 94 S.Ct. 2140. Further, the notice must advise that the judgment, whether favorable or not, will bind all class members not requesting exclusion. *Id.* "To this end, the court is required to direct to class members 'the best notice practicable under the circumstances including individual notice to all members who can be identified through reasonable effort.'" *Id.* (citation omitted). "[I]ndividual notice must be provided to those class members who are identifiable through reasonable effort." *Id.* at 175, 94 S.Ct. 2140 (rejecting argument for notice by publication to a person "whose name and address are known or very easily ascertainable," on procedural due process grounds).

■ For a class to be sufficiently defined, it must be precise: the class members must be presently ascertainable by reference to objective criteria. *Beeson,* 22 S.W.3d at 403. This means that the class should not be defined by criteria that are subjective or that require an analysis of the merits of the case. *Id.* A proposed class must be clearly defined to make it administratively feasible for the court to determine whether a particular individual is a member. *Rios v. Marshall,* 100 F.R.D. 395, 403 (S.D.N.Y.1983). An imprecise class definition, which does not give rise to presently ascertainable class

members, undermines judicial economy and efficiency, thereby interfering with one of the primary purposes of class-action suits. *Beeson,* 22 S.W.3d at 403 (citing 5 JAMES WM. MOORE, ET AL., MOORE'S FEDERAL PRACTICE ¶¶ 23.20–.21). However, a class definition will not fail merely because every potential class member cannot be identified at the suit's commencement. *Beeson,* 22 S.W.3d at 404; *see Carpenter v. Davis,* 424 F.2d 257, 260 (5th Cir.1970).

### Discussion

■ Before we address any other issues, we must first consider AIMCO's argument that the trial court abused its discretion in certifying the class, because, AIMCO claims, the class is identified only by reference to "old telephone numbers" and there is no demonstrated basis for determining the actual identity of each class member. This is the pivotal question in this case since the determination of whether a particular individual is a class member is required in order to protect that person's interests. *See* TEX.R. CIV. P. 42; *Beeson,* 22 S.W.3d at 403.

In this case before us, the proposed class includes a list of over 112,000 telephone numbers, not names of persons. There is no evidence in the record of any information, such as name or address, identifying any person as the "holder" of any telephone number on the log. Nothing in the record suggests how the identity of a "holder" is to be determined. The only evidence in the record regarding the potential connection of the identity of a person with a telephone number is from AIMCO.

AIMCO produced evidence showing the rate at which telephone numbers in Texas are disconnected and taken out of service. According to this evidence, about 6.5 million telephone numbers were disconnected in Texas between the date of the first

alleged fax advertisement in 2001 and the class certification hearing in December 2002. Further, the evidence reflects that some disconnected telephone numbers are held out of service and then reassigned to different subscribers. Accordingly, AIMCO's evidence shows some proof that the ownership of telephone numbers on the logs is not fixed, but transient. AIMCO argues that the current holder of any telephone number on the list of over 112,000 may not be the same as the holder of that telephone number on the date the ABF log shows a fax was sent. There is nothing in the record showing that it is possible, much less administratively feasible, to ascertain the identity of the class members from the voluminous list of telephone numbers generated by the American Blast Fax daily fax confirmation logs.

Suggs does not dispute that the individual class members are not presently identified. Rather, Suggs argues that many class actions have been certified when it was impossible to identify at the time of certification the names and addresses of a large number of the class members. In making this argument, Suggs cites several cases, but relies, in particular, on *Sun Coast Resources, Inc. v. Cooper*, 967 S.W.2d 525, 536–37 (Tex.App.-Houston [1st Dist.] 1998, pet. dism'd w.o.j.).

*Sun Coast* involved allegations that appellants/defendants sold defective gasoline that damaged the catalytic converters in the gasoline purchasers' vehicles. The trial court certified a class consisting of "potential claimants, namely those entities that have purchased for their consumption in automobiles certain Defective Gasoline [ ] allegedly manufactured or distributed by one or more Defendants." *Id.* at 528–29 (footnote omitted). Appellants argued that their pre-lawsuit voluntary claims procedure, where claimants were alerted primarily by newspaper stories and "fortui-

tous television coverage," was superior to and less complicated than a class action. *Id.* at 531. The voluntary procedure was halted by certification of the class. Appellants did not raise the issue of the sufficiency of the class definition.

In making the objection as to the lack of superiority of a class action to adjudicate claims, appellants claimed that it would be difficult to manage the class action because there was allegedly no way to identify individual class members or give them notice. *Id.* at 536. However, the court rejected appellants' argument respecting superiority, reasoning that publication notice to class members was not precluded and, under the circumstances, publication notice met the "reasonable effort" notice standard of rule of civil procedure 42(c)(2). *Id.* Finally, the court dismissed appellants' assertion that a "morass" of "unrelated" claims would result from the publication notice. In doing so, the court reasoned that "appellants overlook that the same was true during their voluntary claims procedure, yet they were able efficiently to determine which claims resulted from their gasoline and which did not." *Id.* at 537.

We conclude *Sun Coast* is distinguishable from the facts at issue before us. The parties have not raised, as in *Sun Coast*, an issue regarding the superiority of a class action as contrasted with another method of administering the litigation of claims. Here, we face an issue regarding the sufficiency of the class definition, an issue that was not raised in *Sun Coast*. Additionally, we note that the court of appeals included in its analysis of the certification order the observation that "[a]t this early stage, the trial court could rationally have concluded sorting through claims would not be the 'morass' appellants predict." *Sun Coast*, 967 S.W.2d at 537. By making this observation, the *Sun Coast* court appears to be suggesting any sorting

through of claims could be addressed at some later point in time during the pendency of the case. That cannot be done in the case before us. Subsequent to *Sun Coast*, the Texas Supreme Court directed in *Bernal* that trial courts may not "certify now and worry later." *Bernal*, 22 S.W.3d at 435. We are mindful of that directive and will adhere strictly to it.

A more analogous fact situation to the case before us is addressed in *Commander Properties Corp. v. Beech Aircraft Corp.*, 164 F.R.D. 529 (D.Kan.1995). The reasoning of the trial court in *Commander Properties* supporting its refusal to certify the class reflects a preferable course to that of the trial court in the case before us. There, the proposed class representative sued for, *inter alia*, breach of warranty because of alleged defects in the wing structure of King Air aircraft models 90 and 100. These alleged defects purportedly caused owners of the aircraft to expend amounts of money to obtain inspections of the aircraft and repairs to remedy the claimed defects. Certification was sought of a class that included owners of these King Air aircraft during a specific time period within a range of specified aircraft serial numbers. *Id.* at 532–33. The court ascertained that the class would necessarily include any owners of a new or used aircraft during the relevant period. *Id.* at 533. Accordingly, the court determined that, both from the standpoint of manageability and difficulty of determining class membership in order to provide adequate notice, the proposed class was not suitable for class treatment. *Id.* at 534. The court concluded:

> Class certification is definitely not appropriate for a class which includes all owners in the chain of title [ ].... [A] class which includes every owner in the chain of title presents serious management problems because it would require a search of the title of each plane to

> determine membership in the class so that notice under [Federal] Rule [of Civil Procedure] 23(c)(2) could be served.

*Id.* at 534–3 (footnote omitted).

In the case before us, the ABF daily fax confirmation logs are the source of the over 112,000 telephone fax numbers which Suggs claims constitute the class membership. However, this list of telephone numbers is simply a collection of data. There is nothing in the record which suggests that the identity of any one class member by name can be ascertained.

The difficulty of ascertaining the identity of the holder of each telephone number raises grave concerns about whether adequate notice can be supplied to the class members. As we indicated above, the sufficiency of a definition of a class rests upon, in part, and is intertwined with, the notice the court is to direct to each class member. *See Eisen*, 417 U.S. at 173–76, 94 S.Ct. 2140. Suggs has proposed "faxing" notice to the telephone numbers on the logs. However, there is no evidence in the record that this method is calculated to provide notice to class members in order for their interests to be protected. The only evidence in the record suggests that the telephone numbers on the logs may be transient. There is no factual basis in the record to support the claim that a fax "notice," which might be sent to the number on the logs, would be calculated to be received by the putative class member, i.e., the actual holder of that number on the relevant dates. Further, there is nothing in the record to show us that notice by publication would provide adequate notice to those telephone number holders whose identity may not be ascertainable by any means. This dilemma is comparable to that faced by the *Commander Properties* court where the court concluded that the entire chain of title of an aircraft must be

reviewed to ascertain membership in the class. *See Commander Props. Corp.*, 164 F.R.D. at 534–35. Here, the ownership history of each of the over 112,000 telephone numbers on the fax logs may have to be searched in order to ascertain the identity of the class members and accomplish transmission of notice. *See Rex v. Owens*, 585 F.2d 432, 435 (10th Cir.1978); *DeBremaecker*, 433 F.2d at 734; *Commander Props. Corp.*, 164 F.R.D. at 534. Yet, there is no evidence in the record that such a complete database of ownership history exists.

### CONCLUSION

Suggs had the burden of showing the class is presently ascertainable by reference to objective criteria. *See Beeson* 22 S.W.3d at 403. Suggs has not done so. The threshold inquiry in review of a class certification is the class definition. We have decided the class definition is insufficient in this case. *See Pinnacle Realty Mgmt. Co. v. Kondos*, No. 05–03–00559–CV, slip op. at 3, 2004 WL 243786, at *1, —— S.W.3d ——, —— (Tex.App.-Dallas Feb.11, 2004, no pet. h.). Accordingly, we neither address nor comment on the merits of AIMCO's additional issues.

We reverse the trial court's order granting class certification and remand this case for further proceedings consistent with this opinion.