585 F.2d 432
 MacArthur Sylvester REX, and all others similarly situated,
Plaintiffs-Appellants,
v.
Charles OWENS, as an Individual and in his official capacity
as District Judge, in the District within and for Oklahoma
County, and all others situated, ex rel. STATE OF OKLAHOMA,
Director of the Oklahoma Mental Health Department,
Defendants-Appellees.
 No. 77-1220.
 United States Court of Appeals,
Tenth Circuit.
 Submitted Aug. 8, 1978.
Decided Oct. 4, 1978.
 
 Porter H. Morgan, III, and Carl G. Stevens, Oklahoma City, Okl. (Monica E. McKnight, Oklahoma City, Okl., on the brief), of Legal Aid Society of Oklahoma County, Inc., for plaintiffs-appellants.
 Kay Karen Kennedy, Asst. Atty. Gen., Oklahoma City, Okl. (Larry Derryberry, Atty. Gen., and David K. McCurdy, Asst. Atty. Gen., Oklahoma City, Okl., on the brief), for defendants-appellees.
 Before SETH, Chief Judge, and BARRETT and LOGAN, Circuit Judges.
 BARRETT, Circuit Judge.
 
 
 1
 MacArthur Sylvester Rex (Rex) appeals from a final order dismissing as moot his action for injunctive and declaratory relief, which he filed based on 42 U.S.C. § 1983 and 28 U.S.C. §§ 2201-2202. Rex sued after he had been involuntarily committed to an Oklahoma mental institution pursuant to the provisions of a statute which permits commitment for observation and examination prior to a preliminary hearing in a criminal proceeding.
 
 
 2
 On April 7, 1975, Rex was arrested and charged with indecent exposure. He was incarcerated. While Rex was awaiting hearing, a public defender made an application for his commitment to a state hospital for observation and examination, pursuant to 22 Okla.Stat.Ann. § 1171.[1] Rex was found to be presently insane and the state court ordered him committed until sane, pursuant to 22 Okla.Stat.Ann. § 1174. Rex was not present at the hearing on this matter, which was held April 28, 1975. In December, 1975 the criminal charges were dismissed against Rex. He was, however, detained at the mental institution under the April 28, 1975, order of commitment.
 
 
 3
 Rex has a long history of institutionalization for mental difficulties. He has, on several occasions, been committed to a state hospital for observation and examination as a result of indecent exposure charges. In 1967 he was committed by civil proceedings for three years. He was likewise committed again in 1971. In both instances, criminal charges were dismissed prior to the time of commitment. In 1974, Rex was again charged with indecent exposure and was civilly committed. The criminal charges were not dismissed in this instance. Thus, as a result of acts of indecent exposure, Rex has been arrested four times since 1967 and repeatedly hospitalized, pursuant to the challenged Oklahoma statutes.
 
 
 4
 On December 3, 1976, while still hospitalized, Rex filed this action. He requested that the Oklahoma statute under which he had been committed be declared invalid as violative of due process and Fourteenth Amendment protections. Additionally, he filed motions for class action certification and for a temporary restraining order directed against the mental hospital authorities who had kept him institutionalized.
 
 
 5
 At the hearing on the temporary restraining order, the district court ruled that Rex was being wrongfully held pursuant to the order of commitment. Rex's release was thus ordered. The trial court subsequently refused to certify the action as a class action. The court then dismissed Rex's complaint as moot inasmuch as he was no longer under commitment.
 
 
 6
 On appeal, Rex contends that the district court erred in: (1) dismissing as moot his claim for relief when he had on several occasions been subjected to the operation of the commitment statutes which yet remain in full force and effect; (2) finding that the cessation of the conditions justifying his claim for injunctive relief also mooted his claim for declaratory relief where an allegedly unconstitutional statute had been applied to him; and (3) ruling that the action was not to be certified as a class action.
 
 I.
 
 7
 Rex contends that his claim is not moot in that it is based on circumstances capable of repetition. We agree.
 
 
 8
 It would appear that Rex's action is mooted inasmuch as he is no longer in the state mental hospital under the order of commitment. In this sense, then, there is no longer a "case or controversy" involved. However, many opinions dealing with the mootness question reveal that there are special circumstances whereby an action will not be dismissed as moot even though the party seeking relief is no longer affected by the action complained of. In Southern Pacific Terminal Co. v. ICC, 219 U.S. 498, 31 S.Ct. 279, 55 L.Ed. 310 (1911), the Supreme Court articulated an often repeated principle: that a case will not be moot if the issue is "capable of repetition, yet evading review." 219 U.S. at 515, 31 S.Ct. at 283.
 
 
 9
 The rubric of Southern Pacific Terminal has been adopted and approved in a variety of decisions. Super Tire Engineering Co. v. McCorkle, 416 U.S. 115, 94 S.Ct. 1694, 40 L.Ed.2d 1 (1974), dealt with the payment of welfare benefits to striking workers. The Court observed that the matter constituted a reviewable case or controversy, even though the strike had ceased before the cause was appealed. The Court stated that the action was not moot inasmuch as present interests of the parties were affected by government action: "It is sufficient, therefore, that the litigant show the existence of an immediate and definite governmental action or policy that has adversely affected and continues to affect a present interest." 416 U.S. at 125-126, 94 S.Ct. at 1700.
 
 
 10
 Linmark Associates, Inc. v. Willingboro, 431 U.S. 85, 97 S.Ct. 1614, 52 L.Ed.2d 155 (1977), involved an action challenging a municipality's prohibition against the posting of "For Sale" or "Sold" signs. The Court held that the case was not moot, even though the property in question had been sold and the signs removed while the appeal was pending, inasmuch as a real estate agent had declared that he planned to place "For Sale" signs on other property in the municipality. Thus, the controversy was held to be "of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." Maryland Cas. Co. v. Pacific Coal and Oil Co., 312 U.S. 270, 273, 61 S.Ct. 510, 512, 85 L.Ed. 826 (1940).
 
 
 11
 Further, in Buffalo Forge Co. v. Steelworkers, 428 U.S. 397, 96 S.Ct. 3141, 49 L.Ed.2d 1022 (1976), the Court held that there was a live controversy even though employees had returned to work before the labor-management dispute reached the Supreme Court, in that the work stoppage might be resumed at any time in the near future.
 
 
 12
 Finally, in SEC v. Sloan, 436 U.S. 103, 98 S.Ct. 1702, 56 L.Ed.2d 148 (1978), the Court enunciated a test relating to the mootness issue here under consideration:
 
 
 13
 Contrary to the Commission's contention, we think even on the record presently before us this case falls squarely within the general principle first enunciated in Southern Pacific Terminal Co. v. ICC, supra, And further clarified in Weinstein v. Bradford, supra, (423 U.S. 147, 96 S.Ct. 347, 46 L.Ed.2d 350) that even in the absence of a class action a case is not moot when "(1) the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there was a reasonable expectation that the Same complaining party would be subjected to the same action again." Weinstein v. Bradford, supra, At 147, 96 S.Ct. at 349 (emphasis added).
 
 
 14
 436 U.S. at 109, 98 S.Ct. at 1707.
 
 
 15
 We hold that Rex's case fits within the above-enunciated two-pronged test. His commitment to and involuntary detention in the state hospital was terminated prior to the order of dismissal of the instant case. Further, it appears highly probable that Rex will again be subjected to the processes of the Oklahoma commitment statute. He has been committed to a state hospital or mental health facility in Oklahoma on at least four distinct and separate occasions for a condition which seems to have evaded control or cure. Even though he has received treatment since 1967, Rex has committed recurring acts of indecent exposure. In these circumstances there is a reasonable expectation that he may again be committed to a state mental hospital pursuant to 22 Okla.Stat.Ann. §§ 1171-1174. Thus, it would be ludicrous to state that there is no reasonable expectation that Rex will not be subjected to the same action again. This case, then, presents the converse of the rule that absent a reasonable expectation that the plaintiff will be subjected to the same action again, his claim will be declared moot because he does not presently have a stake in the outcome. Weinstein v. Bradford, 423 U.S. 147, 96 S.Ct. 347, 46 L.Ed.2d 350 (1975); Napier v. Gertrude, 542 F.2d 825 (10th Cir. 1976), Cert. denied, 429 U.S. 1049, 97 S.Ct. 759, 50 L.Ed.2d 765 (1977).
 
 II.
 
 16
 Rex asserts that the class should have been certified. He asks for retroactive class certification.
 
 
 17
 Rule 23(a) and 23(b) Fed.Rules Civ.Proc., 28 U.S.C., set forth clear, stringent guidelines for certification of a class action. Pursuant to Rule 23(a) a class will be certified only: if the class is so numerous that joinder is impracticable; there are common factual or legal questions; the claims of the representative are typical of the claims of the class; and the representative will fairly and adequately protect the interest of the class.
 
 
 18
 A party seeking class action certification must demonstrate, under a strict burden of proof, that all of the requirements of 23(a) are clearly met. Albertson's Inc. v. Amalgamated Sugar Co., 503 F.2d 459 (10th Cir. 1974); Wilcox v. Commerce Bank of Kansas City, 474 F.2d 336 (10th Cir. 1973); Rossin v. Southern Union Gas Co., 472 F.2d 707 (10th Cir. 1973). Certification of a class lies within the discretionary powers of the trial court and its determinations will not be disturbed absent a showing of abuse of that discretion. Monarch Asphalt Sales Co., Inc. v. Wilshire Oil Co. of Texas, 511 F.2d 1073 (10th Cir. 1975); Wilcox, supra.
 
 
 19
 In his amended complaint, Rex requested class certification. He alleged that he was seeking to represent himself and "all other persons similarly situated. The members of the class similarly situated are all persons who have been, are, or may be subjected to the procedure and operation of 22 O.S. 1171-1174." (R., Vol. I., at p. 2.) Although his amended complaint further alleged that the class was so numerous that joinder would be impracticable, Rex did not set forth further allegations or other pleadings demonstrating the truth of this assertion.
 
 
 20
 In class action suits there must be presented some evidence of established, ascertainable numbers constituting the class in order to satisfy even the most liberal interpretation of the numerosity requirement. There is, however, no set formula to determine if the class is so numerous that it should be so certified. The determination is to be made in the particular circumstances of the case. The duty of establishing those particular circumstances rests with the party who asserts the existence of the class and that party must produce some evidence or otherwise establish by reasonable estimate the number of class members who may be involved. Moore's Federal Practice, 2nd Ed., V. 3B, § 23.05(3), and cases cited.
 
 
 21
 Class actions have been deemed viable in instances where as few as 17 to 20 persons are identified as the class. Arkansas Educational Ass'n v. Board of Education, 446 F.2d 763 (8th Cir. 1971). The ranks of potential class members can, obviously, include varied numbers of affected persons. See: Afro American Patrolmen's League v. Duck, 503 F.2d 294 (6th Cir. 1974) (no more than 35 minority group members identified); Circle v. Jim Walter Homes, Inc., 535 F.2d 583 (10th Cir. 1976) (358 persons who executed challenged negotiable notes); McCown v. Heidler, 527 F.2d 204 (10th Cir. 1975) (262 lot purchasers); Penn v. San Juan Hospital, Inc., 528 F.2d 1181 (10th Cir. 1975) (members of a Navajo Indian Tribe who sought care at nearby hospital); Monarch Asphalt Sales Co., Inc. v. Wilshire Oil Co. of Texas, supra (class of 37 contractors).
 
 
 22
 We agree with the district court's assessment that it is doubtful that a class actually exists or that there was a constant existence of a class:
 
 
 23
 The court is of the opinion, however, that . . . here certification of a class in the face of some doubt as to its existence would necessarily entail the grave risk of overstepping the boundary of the justiciable into the territory of the advisory.
 
 
 24
 (R., Vol. I, at 92.)
 
 
 25
 We thus hold that the trial court did not abuse its discretion in refusing class certification. Rex failed to demonstrate, by any criteria, that the action met the requirements of Rule 23(a).
 
 
 26
 Reversed in part, affirmed in part and remanded for further proceedings consistent herewith.
 
 
 
 [1]
 22 O.S. 1971, § 1171 provides that:
 If any person is held in confinement because of criminal charges, or if he has criminal charges pending or likely to be filed against him, or if he has been taken into custody because of a criminal act or acts, and prior to the calling of an indictment or information for trial or preliminary hearing, a doubt arises as to his present sanity, either such individual or the district attorney may make application to the District Court for an order committing such individual to a state hospital within the Department of Mental Health for observation and examination for a period not to exceed sixty (60) days. Provided, however, where an adequate examination can be had in the county where the charge is pending, such examination shall be held in such county. Provided, however, the court may extend the sixty-day period where a need for such extension is shown. Any criminal proceedings against such individual shall be suspended pending the hearing of the application by the District Court.