**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**May 5, 2026**

**Christopher M. Wolpert**
**Clerk of Court**

**PUBLISH**

## UNITED STATES COURT OF APPEALS

## FOR THE TENTH CIRCUIT
_____

CHERRY RIDER, trustee of the Cherry
Rider Family Trust; R. W. LUCAS, co-
trustee of the R.W. Lucas and Cathy Lucas
Living Trust, individually and as
representative plaintiff on behalf of persons
or concerns similarly situated; CATHY
LUCAS, co-trustee of the R.W. Lucas and
Cathy Lucas Living Trust, individually and
as representative plaintiffs on behalf of
persons or concerns similarly situated,

     Plaintiffs - Appellants,

v.

OXY USA, INC.; MERIT ENERGY
COMPANY, LLC; MERIT HUGOTON,
L.P.,

     Defendants - Appellees.

------------------------------

EASTERN KANSAS ROYALTY
OWNERS ASSOCIATION,

     Amicus Curiae.

No. 25-3142

_____

**Appeal from the United States District Court**
**for the District of Kansas**
**(D.C. No. 6:23-CV-01274-KHV-TJJ)**
_____

Mr. David G. Seely (Ryan K. Meyer, and Emily K. Arida, of Fleeson, Gooing, Coulson & Kitch, L.L.C., Wichita, Kansas, and Erick E. Nordling of Kramer, Nordling & Nordling, LLC, Hugoton, Kansas, with him on the briefs), for Plaintiffs-Appellants

Mr. Daniel M. McClure, Norton Rose Fulbright US LLP, Houston, Texas (James M. Shultz of Norton Rose Fulbright US LLP, Houston, Texas, James V. Leito IV of Norton Rose Fulbright US LLP, Dallas, Texas, Peter B. Siegal of Norton Rose Fulbright US LLP, Washington, D.C., Robert W. Coykendall and Will B. Wohlford of Morris, Laing, Evans, Brock & Kennedy, CHTD., Wichita, Kansas, James M. Armstrong of Foulston Siefkin LLP, Wichita, Kansas, and Mark Rodriguez and Maryam Ghaffar of Beck Redden LLP, Houston, Texas, with him on the brief), for Defendants-Appellees

Rex A. Sharp and Scott B. Goodger, Sharp Law, LLP, Prairie Village, Kansas, filed an Amicus Curiae brief in support of Appellants.

_____

Before **BACHARACH**, **KELLY**, and **FEDERICO**, Circuit Judges.

_____

**KELLY**, Circuit Judge.

_____

Plaintiffs-Appellants Cherry Rider, as trustee of the Cherry Rider Family Trust, and R.W. Lucas and Cathy Lucas, as co-trustees of the R.W. Lucas and Cathy Lucas Living Trust, filed a putative class action in 2023 against Merit Energy Company, LLC and Merit Hugoton, L.P. (collectively, "Merit") and OXY USA, Inc. ("Oxy"), the Defendants-Appellees. Plaintiffs own royalty interests in the Kansas Hugoton Gas Field. Their claims arise from the alleged breach of a 2008 class action settlement agreement with Oxy that resolved a dispute over the underpayment of royalties. Merit and Oxy filed motions to dismiss as a matter of law which the district court denied. Thereafter, the district court denied class certification because it found that the class was not ascertainable and then determined that Plaintiffs could

2

not satisfy any other Rule 23 requirements.  Plaintiffs timely filed a petition for an interlocutory appeal which we granted.  Fed. R. App. P. 5; Fed. R. Civ. P. 23(f).

On appeal, Plaintiffs argue that the district court erred in concluding that (1) proof of record title ownership would be required for every potential claimant, notwithstanding that Merit can identify all royalty payees; (2) identification of the class was not administratively feasible, thereby failing to adequately consider the proposed class definition and the fact that the class includes over 1,900 members who were parties to the settlement, particularly given that numerosity was not contested; and (3) the other class certification requirements were not met, where the district court's conclusions regarding administrative feasibility affected the remainder of its analysis.  For the reasons that follow, we reverse the district court's denial of class certification and remand with instructions to certify the putative class.

### Background

#### A.  The 2008 Settlement.

On November 13, 1998, a group of plaintiffs filed a putative class action, Littell v. OXY USA, Inc., Case No. 98-CV-51 (the "Littell case"), in the District Court of Stevens County, Kansas against Oxy, alleging Oxy was underpaying royalties on lease agreements in the Kansas Hugoton Gas Field.  I Aplt. App. 40. The court certified the class under Kansas law.  Id. at 41.  The Littell class was defined as:

> All persons or concerns owning mineral interests in lands located in the areal confines of the Kansas Hugoton Gas Field, burdened by oil and gas leases owned in whole or in part by defendant with respect to gas

3

production from the above base of the Panoma-Council Grove Field, whose royalty payments have been reduced by a "gathering/compression" deduction or "marketing deduct" identified on the monthly gas revenue detail sent by defendant to each such member.

Id.  In January of 2008, the Littell plaintiffs entered into a settlement with Oxy.  Id. at 40–64.  The court approved the settlement on March 4, 2008, and entered a Journal Entry of Judgment.  Id. at 28–38.  Nineteen class members opted out of the settlement.[1]  Id. at 46, 169.

As part of the settlement, the plaintiffs agreed to release past claims and Oxy agreed to provide $16.7 million to a settlement fund and to cease fuel charges and limit gathering charges[2] on future royalty payments (the "royalty provisions").  Id. at 40–64.  The royalty provisions provided in part:

> It is the intent of the parties hereto that the royalty payments received by members of the Plaintiff Class or their successors in interest with respect to gas produced on or after July 1, 2008, shall not be diminished or reduced by any charge other than fifteen cents per mmbtu ($0.15/mmbtu) for Gathering Charges, taxes owed by them or the actual cost of transporting such gas on a transmission pipeline.

Id. at 52 (emphasis added).  The settlement also stated:

---

[1] Cherry Rider, as Trustee of the Cherry Rider Family Trust, was a participating class member in the settlement and a class representative.  R.W. Lucas was also a participating class member, and the R.W. Lucas and Cathy Lucas Living Trust is the successor in interest to R.W. Lucas.  VII Aplt. App. 232–33.

[2] The settlement agreement defines "fuel charges" as "gas used to operate compressors located on a Gathering Facility[]."  I Aplt. App. 45.  It defines "gathering charges" as "charges, expenses or assessments . . . associated with any and all activities occurring between the wellhead of any well producing gas that is subject to a royalty interest owned by a member of the Plaintiff Class and the inlet to any mainline transmission facility[.]"  Id.

> This [settlement] shall be binding upon and shall inure to the benefit of the parties hereto and their respective successors, assigns, executors, administrators, heirs and legal representatives, and upon any corporation or other entity into or with which any party hereto may hereafter merge, combine or consolidate, as the case may be; provided however, that no assignment by any party shall operate to relieve such party of any obligations hereunder.

Id. at 61.

## B. The Present Suit.

Merit acquired Oxy's assets in the Kansas Hugoton Gas Field in May 2014. At the time of the acquisition, Oxy informed Merit about the identity of royalty owners to whom Oxy had been making payments under the Littell settlement and the owners who opted out of the settlement. Id. at 243. Oxy also provided Merit with information on how it calculated royalty payments for participating class members. Id. at 247–48. According to a Merit representative, Merit "attempts to confirm . . . information about ownership interests" before it issues royalty payments, although it is not always successful. II Aplt. App. 190. If there are doubts as to whether the ownership records are correct, payments are placed in suspense until the ownership issue is resolved. Id. at 191–92. Before and after purchasing Oxy's assets, Merit held other interests in Kansas that it acquired from sources other than Oxy. Id. at 188–90; Aplee. Br. at 9–10. Merit contends that it is not bound by the settlement's royalty provisions.[3] Aplee. Br. at 10; Aplee. App. 19–35. Oxy contends that it has

---

[3] Mary Drennan, Merit's division order manager, stated that when Oxy sold to Merit, Oxy informed Merit of the 2008 settlement, although Merit was not provided

no obligation regarding royalty payments by other parties.  See Cherry Rider Family Tr. v. OXY USA, No. 6:23-cv-01274-KHV-TJJ, Defendant Oxy USA Inc.'s Motion to Dismiss at 6–9, ECF No. 27 (D. Kan. Feb. 23, 2024).

Plaintiffs claim that since May 2014 Merit has taken improper deductions from royalty payments in violation of the settlement's royalty provisions.  I Aplt. App. 23. They filed a motion to enforce the Judgment against Merit in the District Court of Stevens County.  Id.  The state district court denied the motion on the grounds that the judgment had become dormant and unenforceable under Kansas law.  Id. at 24. Plaintiffs appealed from that decision on February 8, 2024, and their appeal is still pending before the Kansas Court of Appeals.  Id.; Aplt. Br. at 7.

Plaintiffs filed the present class action complaint on December 29, 2023 in federal court alleging breach of contract claims against Merit and Oxy based on the Littell settlement.  I Aplt. App. 17–26.  According to Plaintiffs, the settlement is

---

the names and ownership numbers of the settlement members or their successors in interest.  II Aplt. App. 196.  According to Ms. Drennan,

> Merit understood from Oxy that Oxy was paying all royalty owners in Kansas wells in the same manner regarding deductions using the methodology set out in the Littell settlement, regardless of whether the owners were Littell class members or not.  Merit determined that Merit was not subject to the future royalty provisions regarding deductions in the Littell settlement agreement.

Id. at 196–97.

binding on Merit, and assignment did not relieve Oxy of its obligations.[4]  Aplt. Br.

at 10–11.  They defined the putative class in their complaint as follows:

> The class of persons or entities who were Participating Class Members in the class action settlement approved by the District Court of Stevens County, Kansas, on March 4, 2008, in the case of Opal Littell, et. al v. OXY USA, Inc., Case No. 98-CV-51, together with their successors, and who have received, or are entitled to receive, royalty payments from Merit Energy Company, LLC, Merit Hugoton LP, and/or any related or affiliated entity, at any time during the period of May 2014 to the present.

I Aplt. App. 19.

The parties disputed the feasibility of identifying "successors" in interest to the

Littell class members.  Id. at 169.  According to Plaintiffs, Defendants were

concerned that they would need to conduct individualized title examinations for each

potential class member to identify the persons and entities entitled to the benefits of

the Littell settlement.  Id.  Plaintiffs then proposed a modified class definition in their

Motion for Class Certification that focused on payees under the leases Merit acquired

from Oxy:

> All persons or entities to whom Merit Energy Company, LLC, Merit Hugoton LP, and/or any related or affiliated entity (collectively "Merit") has paid royalties at any time since December 2, 2017, under oil and gas leases in the Kansas Hugoton Field that were assigned to Merit by OXY USA, Inc. in or about 2014, except for those persons or entities who have

---

[4] Oxy and Merit filed separate motions to dismiss, both of which the district court denied.  Rider v. OXY USA, Inc., No. CV 23-1274-KHV, 2024 WL 1856315 (D. Kan. Apr. 29, 2024).  Merit argued that it is not bound by the settlement because it is not a successor or assign of Oxy, and Oxy argued that the royalty provisions only apply to its own payments to class members.  Id. at *3.  The court found that Plaintiffs' interpretation of the settlement was a "reasonable one" and that Defendants had failed to show "as a matter of law" that the settlement did not apply to them.  Id. at *4–5.

received royalty payments from Merit exclusively for interests now or previously held by any of the 19 persons or entities who opted out of the class action settlement approved by the District Court of Stevens County, Kansas, on March 4, 2008, in the case of Opal Littell, et. al v. OXY USA, Inc., Case No. 98-CV-51[.]

Id. at 168–69.  Defendants opposed the motion for class certification and the parties engaged in seven months of discovery on class certification issues.  Aplee. App. 258. Plaintiffs did not provide any expert testimony in support of certification.  Id. at 259. They maintained that the class could be readily ascertained from Merit's business records.  VII Aplt. App. 239.  Defendants disagreed, arguing that ascertaining class members would require individualized land ownership analysis to determine which persons and entities have standing to assert a claim for breach of the settlement.  Id.

Defendants relied upon the declaration of Mary Drennan, Merit's division order manager, who maintains records used to pay mineral interest owners.  Id. at 240; see also II Aplt. App. 187–214 (entire declaration).  According to Ms. Drennan, Merit's royalty payment records do not establish who the class members are because the records do not tie payees to specific oil and gas leases. VII Aplt. App. 240.  To gather such information, Merit would need to look at division order and contract files to determine whether the payee is an owner under a lease acquired from Oxy.  Id.  Merit also makes payments on interests that it acquired from sources other than Oxy.  Id.  Further, even if Merit could identify the individuals who receive royalties under the Oxy leases, those payees may not be the current title owners.  Id.  Ms. Drennan believes Merit is paying royalties to payees that no longer have an interest but that failed to inform Merit of the ownership

8

change.  Id. at 241.  Defendants also presented declarations from three expert witnesses, all of whom agreed that the class was not ascertainable from Merit's business records.  II Aplt. App. 224–61, 263–87; III Aplt. App. 2–24; VII Aplt. App. 241–43.

On June 18, 2025, the district court denied Plaintiffs' motion for class certification.  VII Aplt. App. 229–49.  It held that the class members were not readily ascertainable; therefore, the class did not satisfy numerosity.  Id. at 237–44.  Specifically, it would not be "administratively feasible" to determine which members own mineral interests in land burdened by leases that Merit acquired from Oxy.  Id. at 243.  The court also held that Plaintiffs had not satisfied the commonality, typicality, adequacy, predominance, or superiority requirements.  Id. at 244–49.  As noted, we granted permission to appeal the court's denial of class certification.  Id. at 250–51.

## Discussion

We "review de novo questions of whether the district court applied the correct legal standard in its class certification analysis."  Sherman v. Trinity Teen Sols., Inc., 84 F.4th 1182, 1192 (10th Cir. 2023).  If the court applied the correct legal standard, our review is for an abuse of discretion.  Id.  "The district court abuses its discretion when it misapplies the Rule 23 factors—either through a clearly erroneous finding of fact or an erroneous conclusion of law—in deciding whether class certification is appropriate."  Id. (quoting CGC Holding Co., LLC v. Broad & Cassel, 773 F.3d 1076, 1085–86 (10th Cir. 2014)).

9

Under Federal Rule of Civil Procedure 23, the party seeking to certify a class must show that "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a); Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 345 (2011).  The class must also be ascertainable.  See Rex v. Owens ex rel. Oklahoma, 585 F.2d 432, 436 (10th Cir. 1978).  To certify a class for damages under Rule 23(b)(3), the party must also show that "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3); Wal-Mart Stores, Inc., 564 U.S. at 362.

### A. The Proposed Class is Ascertainable.

#### 1. The Ascertainability Standard Has Been Clarified and Differs from That Used by the District Court.

Rule 23 does not explicitly include an ascertainability requirement, but most circuits require the class to be ascertainable before granting class certification.  Cline v. Sunoco, Inc. (R&M), 159 F.4th 1171, 1194 (10th Cir. 2025).  Meaning, the moving party must present "a sufficiently definite" class definition that will allow the court to identify class members at some stage of the proceeding.  Id. (quoting 1 Newberg and Rubenstein on Class Actions § 3:3 (6th ed. 2025)).

At the time the district court denied class certification here, it correctly indicated that we had yet to adopt a test for ascertainability. VII Aplt. App. 238. District courts in the Tenth Circuit, it noted, applied either the Third Circuit or Seventh Circuit approach to ascertainability. Id.; see also Cline, 159 F.4th at 1194–95 (describing the Third Circuit approach as the minority view and the Seventh Circuit approach as the majority view). The Third Circuit requires plaintiffs to present an objectively defined class and show that a reliable and administratively feasible mechanism exists to determine the class members. VII Aplt. App. 238–39. The Seventh Circuit applies a more relaxed standard, requiring only that plaintiffs present a clearly defined class based on objective criteria. Id. at 239.

The district court treated ascertainability as a sub-requirement of numerosity, see Rex, 585 F.2d at 436, and found that Plaintiffs had not shown that the class is ascertainable based on the class definition, VII Aplt. App. 243. It stated that "[c]lass membership is wholly premised on whether class members own mineral interests in land burdened by oil and gas leases which Merit acquired from Oxy[.]" Id. And "[t]o determine that . . . is not administratively feasible." Id. The court would have to individually consider Merit's payment records, lease records, acquisition records, and other documents to assess the land ownership chain for each payee. Id. Such "individualized inquiries" are a "significant hurdle[.]"[5] Id. at 243–44.

---

[5] Plaintiffs argue that the court should not have reached the ascertainability issue because Defendants did not contest numerosity. Aplt. Br. at 15–16. But "[w]hen addressing class certification, the district court must undertake a rigorous analysis to satisfy itself that the prerequisites of Rule 23 are met." CGC Holding

11

We since have clarified our approach to ascertainability. In <u>Cline v. Sunoco</u>, we rejected the "administrative feasibility" requirement and held that "[f]or class members to be ascertainable, the class definition must (1) be defined clearly and cannot be defined too vaguely, and (2) be defined objectively and cannot be based on subjective criteria[.]" 159 F.4th at 1194–96. Plaintiffs must show that class members can be identified, although not necessarily already identified at the time of certification, "using reasonable — but not perfect — accuracy." <u>Id.</u> (citation modified).

We agree with Plaintiffs that <u>Cline</u> applies to the present appeal.[6] Aplt. Reply Br. at 1–6. At a minimum, we would remand to the district court to reconsider ascertainability without considering administrative feasibility. However, under the factors identified in <u>Cline</u> and based on the record, the class here is plainly ascertainable and any finding to the contrary would be an abuse of discretion.[7]

---

<u>Co., LLC v. Broad & Cassel</u>, 773 F.3d 1076, 1086 (10th Cir. 2014) (citation modified). The district court was correct to consider all class certification requirements, including ascertainability.

[6] Defendants filed a Motion for Leave to File Supplemental Brief Addressing <u>Cline v. Sunoco</u> and attached their supplemental brief to the motion. <u>See</u> App. Dkt. No. 51. Although we now grant their motion, none of their arguments dissuade us from applying <u>Cline</u>.

[7] Although we understand that the district court did not have the benefit of <u>Cline</u> as guidance, we pause to note another error in its analysis. After modifying the class definition from their complaint, Plaintiffs sought to certify a class of "[a]ll persons or entities to whom [Merit] has paid royalties at any time since December 2, 2017 under oil and gas leases in the Kansas Hugoton Field that were assigned to Merit by [Oxy] in or about 2014," except for the persons or entities that opted out of the settlement. I Aplt. App. 168–69. The district court stated that "[c]lass

First, the proposed class definition is clearly defined and not vague. As Plaintiffs state, Merit can identify each person or entity it has paid from its own records. Id. at 3; see, e.g., I Aplt. App. 208–29 (check stubs identifying payees). And when Merit acquired Oxy's assets, Oxy provided Merit with the identities of those to whom it was paying royalties under the settlement. I Aplt. App. 243. Second, the class is defined by objective criteria. The court need not resort to any subjective inquiries. See Evans v. Brigham Young Univ., No. 22-4050, 2023 WL 3262012, at *9 (10th Cir. May 5, 2023) (affirming denial of class certification where the court would have to determine the intent of the putative class members).

Insofar as determining ownership, "Merit does not send out its own division orders for existing, producing wells as a prerequisite for making payments to mineral owners" except for new wells it drills or upon owner request. II Aplt. App. 191. Rather, "Merit applies the paydecks it receives from the producer who sold the properties to Merit and continues making payments in accordance with those paydecks[,]" making changes only when it is informed of ownership changes or errors. Id. "If Merit has doubts about whether it has correct ownership information

---

membership is wholly premised on whether class members own mineral interests in land burdened by oil and gas leases which Merit acquired from Oxy in 2014" and stressed the "significant hurdles of determining ownership interests[.]" VII Aplt. App. 243. Plaintiffs argue on appeal that the district court focused on the wrong class definition and "created an 'ownership' problem where none exists." Aplt. Br. at 24. As discussed below, we understand the core of Defendants' argument against class certification to involve ownership tracing issues, but we stress the importance of considering the precise class definition when denying class certification on that basis.

for a property and payee, the proceeds are placed in suspense for that specific payee and property." Id. Thus, the exhaustive measures Merit claims will be necessary to ascertain the identity of the payee whom Merit believes is the correct owner of the royalty interest in a given property is belied by Merit's existing practice. Merit knows who its payees are.

Regardless, Cline clarified that neither gaps in a defendant's record-keeping nor the large number of records to be reviewed can defeat class certification. Cline involved a class action challenging the defendant's late distribution of royalty payments without interest from oil extraction profits. 159 F.4th at 1179. We rejected the defendant's argument against ascertainability that not all class members were identified, finding unpersuasive defendant's claim that "locating class members will be time-consuming and overly difficult." Id. at 1194. We clarified that "there is no basis for finding a lack of ascertainability because it is difficult to identify the class members." Id. at 1196 (citation modified). Especially where the law required the defendant to gather and produce records, "gaps in the records kept and produced by a defendant cannot be used to hinder class certification." Id. at 1194. Moreover, "a defendant cannot avoid class certification by objecting to the number of records that must be individually reviewed, because that is essentially an objection to the size of the class, which explicitly is not a reason to deny class certification." Id. at 1195 (citation modified). We noted that administrative feasibility may still be relevant to whether class resolution is superior to individual resolution, but it cannot "operate as a trump card that outweighs all other factors under Rule 23." Id. at 1196.

14

Defendants contest whether they have a record-keeping duty like the defendant in Cline. Aplee. Br. at 52–53. But as noted, Merit already makes monthly royalty payments to Littell class members and their successors in interest. Amicus Br. at 10. If the district court later reaches the merits and finds Merit is underpaying royalties, Merit need not separately ascertain the class because it already sends monthly payments to royalty interest owners in the Kansas Hugoton Gas Field. Id. Amicus Eastern Kansas Royalty Owners Association asserts that Merit's records are digitized and easily searchable and Merit employs software to track ownership information. Id. at 11–14. Merit admits that it maintains division order files on almost every property from which it produces gas and other hydrocarbons, but claims that its automated search capability is limited. II Aplt. App. 189. Be that as it may, we agree with Plaintiffs and amicus that under Cline, Defendants cannot point to deficiencies[8] or inaccuracies in their records to defeat ascertainability.

### 2. The Proposed Class Is Not Overbroad.

Before moving to the other certification requirements, we address Defendants' argument that the class is overbroad. Defendants contend that Plaintiffs did not show that the proposed class contains an insignificant number of members who were not parties to the Littell settlement or successors in interest to those parties. Aplee. Br. at 24. This, Defendants argue, is more than just an ascertainability issue. Id. The

---

[8] Moreover, given Merit's awareness of the Littell settlement and Oxy's method of calculating royalty payments in accordance therewith, it was hardly unforeseeable that Merit's determination that it was not bound might be challenged.

15

class definition "divorce[s]" class membership from membership in the Littell

settlement.  Id. at 26–27 (emphasis omitted).  Unless the putative class members are

also members of the Littell settlement or successors in interest to the members, which

Plaintiffs have not met their burden to show that they are, the class members have no

claim and no standing.  Id.  This concern — that Plaintiffs have not shown that the

class members have a claim and standing — affected the district court's certification

analysis as well.

As an example, Defendants explain that Oxy drilled hundreds of new wells in

Kansas after the Littell settlement but before transferring interests to Merit.  Id.

at 24–25.  If those wells are in the Hugoton field, its payees would be members of the

putative class; however, some of those wells may fall outside the Littell class

definition if exclusively below the Panoma-Council Grove Field, the Littell

settlement boundary.  Id.  Those payees, therefore, may not have a claim.  Id.

Plaintiffs respond that royalty interests do not change just because new wells

are drilled.  Aplt. Reply Br. at 8–9.  At oral argument, the parties disagreed whether

the drilling of new wells — particularly below the Panoma-Council Grove Field

described in the Littell class definition — created new ownership issues.  Oral Arg.

at 05:30–09:49, 23:15–23:33, 30:29–32:00.  Further, Plaintiffs claim that the class

can still be certified even if some class members have no damages.  Aplt. Reply Br.

at 11.

Both Plaintiffs and Defendants cite Black v. Occidental Petroleum Corp.,

69 F.4th 1161 (10th Cir. 2023), to support their view of how precise the class

16

definition must be. Black involved a class action antitrust dispute between private landowners and the defendant operator. Id. at 1168–69. In considering whether the plaintiffs had to prove antitrust impact for every class member to satisfy predominance, we stated that "[t]he presence of class members who experienced varying degrees of injury, including some who were altogether uninjured, does not bar class certification[.]" Id. at 1185. The district court need not identify uninjured class members at the certification stage. Id. But we also said, "[a] class including a significant portion of members who for some reason could not have been harmed by the defendant's allegedly unlawful conduct, is defined too broadly to permit certification." Id. (citation modified).

We do not find Black to be precisely on point for either party's position. For one, in Black, we addressed uninjured class members in the context of whether proving antitrust impact is a common issue for the predominance inquiry. Id. Moreover, we explained that a class can be certified even if it consists largely or even entirely of members who are ultimately found to have suffered no harm because the defendant was not the proximate cause of their injury. Id. We looked to Messner v. Northshore Univ. HealthSystem, 669 F.3d 802 (7th Cir. 2012), which stated the point succinctly: a court cannot deny class certification because some class members' claims may eventually fail on the merits. Id. at 823. But here, unlike in Black, we understand Defendants' argument to be that some putative members cannot have a claim, not just that they may not have a successful claim.

However, Black supports the common-sense principle that the class definition need not be perfect. Case law from our sister circuits supports this. See, e.g., Mullins v. Direct Digital, LLC, 795 F.3d 654, 657–58 (7th Cir. 2015) (declining to adopt a heightened ascertainability requirement); Rikos v. Procter & Gamble Co., 799 F.3d 497, 525–26 (6th Cir. 2015) (finding ascertainability met where the class can be determined with reasonable, but not perfect accuracy based on a substantial review of the defendant's data); In re Nexium Antitrust Litig., 777 F.3d 9, 22 (1st Cir. 2015) (noting that it may be impossible to certify a class excluding all uninjured class members given courts' reluctance to certify a "fail-safe class"). And Cline too, in declining to adopt a more stringent ascertainability standard, supports the principle that imprecision in the class definition is acceptable at the certification stage. When we have denied certification on the basis of the class definition, we have done so where the class is defined by subjective parameters. See Evans, 2023 WL 3262012, at * 9.

We also recognize that Defendants' concern that the class definition incorporates owners of wells outside the Littell settlement boundary could be alleviated by modifying the class definition slightly. Plaintiffs originally proposed as the class definition "persons or entities who were Participating Class Members in the [Littell settlement] together with their successors, and who have received, or are entitled to receive, royalty payments[.]" I Aplt. App. 19. This definition would avoid any potential issues with new wells, since that class is defined by the settlement and excludes the payments on wells drilled below the Panoma-Council

18

Grove Field.  District courts have authority to modify the class definition, or the parties may agree to modify the class via a court-approved settlement agreement. In re Motorola Secs. Litig., 644 F.3d 511, 518 (7th Cir. 2011); Powers v. Hamilton Cnty. Pub. Def. Comm'n., 501 F.3d 592, 619 (6th Cir. 2007).  Given the factual issue on new wells, this modification may need to be considered.

However, that modification still would not resolve the crux of Defendants' objection to the class definition, which as we understand it is that this class action would require them to conduct individualized title searches to connect class members to the Littell settlement.  Defendants contend that in Kansas there are 5,416 Merit royalty payees on wells acquired from Oxy, and of those payees 3,480[9] were not original Littell class members, and of the remaining 1,932 class members who were original Littell settlement members, some may have transferred their interest.  Aplee. Br. at 26; II Aplt. App. 227–28.  Those payees — who either cannot trace their interest to the Littell settlement or can trace their interest but have sold that interest — do not have standing to bring a claim, according to Defendants.  Aplee. Br. at 26–27.  The district court found this argument persuasive and, without the benefit of Cline, found the class not ascertainable because Defendants would need to conduct individualized land ownership analysis to determine which payees have standing to sue for breach of the Littell settlement.  VII Aplt. App. 239.

_____

[9] That number should be 3,484.  Aplt. Reply Br. at 10 n.3.

19

We are not persuaded by Defendants' arguments, particularly after Cline. For one, we do not require plaintiffs to prove standing as to all class members at the certification stage. See Colo. Cross-Disability Coal. v. Abercrombie & Fitch Co., 765 F.3d 1205, 1214 (10th Cir. 2014). And at the certification stage, the class need only be ascertainable (not already ascertained) with reasonable accuracy. Cline, 159 F.4th at 1196.

At a minimum there are 1,932 putative class members who were also members in the Littell settlement.[10] The Defendants' concern that some payees may have sold their legal interest in royalty payments is not dispositive. Surely if the records are adequate for Merit to rely on to make regular payments, they are adequate for Merit to rely on to make additional payments, should Plaintiffs have a meritorious claim. As for Defendants' concern that the other 3,480 payees were not members of the Littell settlement, we are not persuaded that it would be too onerous for Merit to determine which of those payees can trace their interest to a Littell settlement member. As Cline clarifies, a defendant cannot defeat class certification by arguing that it must individually review a large number of records. Cline, 159 F.4th at 1195. We conclude that the class is ascertainable and that nothing in the class definition dissuades us from certifying the class.

---

[10] That number easily satisfies numerosity. See Cline, 159 F.4th at 1185 n.3.

**B.  The Proposed Class Satisfies the Other Certification Requirements.**

After denying class certification on ascertainability grounds, the court also found that the class did not meet the other Rule 23 requirements.  VII Aplt. App. 244–49.  Plaintiffs argue that the district court's ascertainability analysis "tainted its analysis" of the other certification requirements.  Aplt. Br. at 35 (citation modified). We agree.  The court's brief discussion of the other requirements focused primarily on challenges with identifying legal interest owners and how the putative class members do not have standing to enforce the settlement without proof of legal ownership.  VII Aplt. App. 244–49.  As discussed, the parties need not conduct individual title analysis at the certification stage, and the class definition here does not hinder the parties from eventually identifying those entitled to damages with reasonable accuracy.  See Cline, 159 F.4th at 1196.  Further, plaintiffs need not prove standing as to every class member for certification purposes.  Colo. Cross-Disability Coal., 765 F.3d at 1214.

The proper inquiries under each Rule 23 requirement support certification of the class.  See Garcia-Rubiera v. Calderon, 570 F.3d 443, 460–61 (1st Cir. 2009) (reversing denial of class certification and directing the district court to certify the class where the district court did not directly address the Rule 23(a) prerequisites, but on appeal finding the prerequisites "easily satisfied").

**1.  Commonality.**

Plaintiffs must show that "there are questions of law or fact common to the class[.]"  Fed. R. Civ. P. 23(a)(2).  "Commonality requires the plaintiff to

21

demonstrate that the class members have suffered the same injury." Wal-Mart

Stores, Inc., 564 U.S. at 349–50 (citation modified). The class claims "must depend

upon a common contention" and that common contention "must be of such a nature

that it is capable of classwide resolution" — meaning "that determination of its truth

or falsity will resolve an issue that is central to the validity of each one of the claims

in one stroke." Id. at 350.

Plaintiffs asserted that the following questions are common to all members of

the proposed class:

1. Has Merit . . . taken improper deductions for gathering charges in excess of the limit of $0.15/mmbtu and the prohibitions on fuel deductions set forth in the Settlement?
2. Is Merit . . . bound by the terms of the Settlement?
3. Is Oxy bound by the terms of the Settlement?
4. Has Merit . . . breached the terms of the Settlement?
5. Has Oxy breached the terms of the Settlement?

VII Aplt. App. 244. The district court found that the second and third questions are

common legal questions but that the first, fourth, and fifth questions are not common

questions because they involve individualized inquiries into property ownership and

deductions. Id. at 245. Some members of the proposed class may have transferred

their interest and lack standing to sue, and alleged deductions will vary from one well

to another and from one gathering system to another. Id. "Without a claim for

breach of contract, whether the Settlement binds Merit or Oxy" — the common legal

questions — "is irrelevant and will not determine the truth or falsity of an issue

central to breach of contract" and "to each proposed class members' claims." Id.

The court held that Plaintiffs failed to satisfy commonality. Id.

Courts may certify a class action involving some individualized inquiries so long as there is "at least one common question of law or fact, the resolution of which would drive the litigation." Sherman, 84 F.4th at 1193 (emphasis omitted); see also Wal-Mart Stores, Inc., 564 U.S. at 359 ("We quite agree that for purposes of Rule 23(a)(2) even a single common question will do." (citation modified)).

We agree with Plaintiffs that the "central issue" here is whether Merit breached the settlement by deducting more than the limit under the settlement. Aplt. Br. at 37. The same limit applies to all leases and all wells under the settlement. Id. The first question alone satisfies the commonality requirement, as do the second and third questions. The need for individualized damages determinations later does not defeat class certification. Menocal v. GEO Grp., Inc., 882 F.3d 905, 922 (10th Cir. 2018). The district court abused its discretion in finding no common questions of law or fact.

### 2. Typicality.

Plaintiffs must show that the "claims or defenses of the representative parties are typical of the claims or defenses of the class[.]" Fed. R. Civ. P. 23(a)(3). The claims of the named plaintiffs and class members "need not be identical[.]" DG ex rel. Stricklin v. Devaughn, 594 F.3d 1188, 1198 (10th Cir. 2010). So long as the claims are "based on the same legal or remedial theory, differing fact situations of the class members do not defeat typicality." Id. at 1198–99.

The district court found that the Plaintiffs' "legal and remedial theories may not be identical to those of the proposed class because . . . the proposed class

23

includes members who may not have legal title to the mineral interests . . . or own the class claim for underpayment of royalties." VII Aplt. App. 246. For example, the Lucas Living Trust is not even a class member since it did not receive royalty payments from Merit during the at-issue time period, even though it now owns the mineral interests. Id.

We find that Plaintiffs satisfy typicality. Named plaintiffs need not have identical claims to the class members. Devaughn, 594 F.3d at 1198. Plaintiffs here claim that Defendants underpaid royalties on their interests and the class members' interests in breach of the Littell settlement. Their only claims apply to all class members. As for the argument that the Lucas Living Trust is not a class member, the parties dispute whether under Kansas law the legal title must change when the settlor and trustee is the same person. Aplt. Br. at 43–44; Aplee. Br. at 44–45. But this issue is beside the point. Transferring the ownership interest to a revocable inter vivos trust does nothing to change the breach of settlement claim that R.W. and Cathy Lucas bring on behalf of their trust. Their claims are based on the same legal theory as the rest of the class. The district court's finding that the named Plaintiffs' claims are not typical of the rest of the class was incorrect.

### 3. Adequacy.

Named plaintiffs must also show that they "will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). We consider two questions to assess adequacy of representation: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs

and their counsel prosecute the action vigorously on behalf of the class?" Rutter &

Wilbanks Corp. v. Shell Oil Co., 314 F.3d 1180, 1187–88 (10th Cir. 2002) (citation

modified).

The district court found that because individualized ownership issues

precluded Plaintiffs from satisfying commonality and typicality, and "[g]iven the

variance in claims, plaintiffs do not necessarily possess the same interests as other

class members, and they would not . . . adequately protect" class interests.  VII Aplt.

App. 247.  But having found that Plaintiffs satisfy commonality and typicality, we

disagree that they fail on adequacy of representation.  There is nothing to suggest that

Plaintiffs have any conflicts of interest with the other class members or that they will

not prosecute the action vigorously on behalf of the class.  Rutter, 314 F.3d at 1187–

88.  As Plaintiffs indicate, Ms. Rider even has previous experience as a class

representative in Littell.[11]  The district court's finding that Plaintiffs are not adequate

class representatives was in error.

### 4. Predominance.

To certify a class for damages under Rule 23(b)(3) plaintiffs must also satisfy

predominance and superiority.  Fed. R. Civ. P. 23(b)(3).  The predominance inquiry

---

[11] Defendants argue that Plaintiffs and their counsel have already failed the
class because they allowed claims prior to December 2017 to expire.  Aplee. Br.
at 46.  Plaintiffs explain that they did not discover Merit's improper deductions for
several years because Merit reported its monthly payments using a different unit of
measurement from the unit listed in the settlement, so the breach was not readily
apparent.  Aplt. Br. at 7.  Plaintiffs are not inadequate because of this delay in filing
suit.

asks "whether proposed classes are sufficiently cohesive to warrant adjudication by representation." Cline, 159 F.4th at 1186 (citation modified). The district court must assess "whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues." Id. (citation modified). "Common, aggregation-enabling issues are those that are susceptible to generalized, class-wide proof" and "individual, aggregation-defeating issues are those for which members of the proposed class will need to present evidence that varies from member to member." Sherman, 84 F.4th at 1194 (citation modified).

The predominance inquiry "begins with the elements of the underlying cause of action." Cline, 159 F.4th at 1186 (citation modified); Sherman, 84 F.4th at 1194–95. Common questions must predominate over individual questions, but "it is not necessary that all of the elements of the claim entail questions of fact and law that are common to the class, nor that the answers to those common questions be dispositive." Cline, 159 F.4th at 1187 (citation modified). "Rule 23(b)(3) requires predominance, not perfection[.]" Id. And "[a]s a matter of law, individualized damages in class actions typically do not defeat predominance[.]" Id. at 1191; see also 2 Newberg and Rubenstein on Class Actions § 4:54 (6th ed.) ("[C]ourts in every circuit have uniformly held that the 23(b)(3) predominance requirement is satisfied despite the need to make individualized damage determinations.").

Further, as we recently stated in Cline, "predominance is often satisfied when a defendant has implemented a class-wide scheme, policy, or practice." Cline,

26

159 F.4th at 1187–88 (collecting cases).  When the suit challenges a class-wide policy or practice, "the focus at trial necessarily is on the defendant and the common evidence in its documents and business records — not on individual issues that require the individualized testimony of each class member."  Id. at 1188.  In such cases the defendant's alleged class-wide breach is the predominant issue.  Id.; see, e.g., Naylor Farms, Inc. v. Chaparral Energy, LLC, 923 F.3d 779, 798 (10th Cir. 2019) (affirming certification of a class action to challenge the underpayment of royalty interests on oil and gas wells where the class-wide breach of lease question predominated over individualized questions on variations in gas quality and lease language, which went to damages).

In a short paragraph, the district court held that common questions do not predominate because there are no common questions.  VII Aplt. App. 248.  And even if there were common questions, the individual ownership issues would predominate.  Id.  On this record common questions abound, so we need not remand the predominance inquiry to the district court.

Plaintiffs bring one claim against each Defendant: breach of settlement.  There is no dispute as to the existence of the settlement agreement, leaving only questions as to (1) whether there is a breach, (2) whether Merit can be held to the settlement agreement, and (3) whether Oxy can be held to the settlement agreement.  These

questions can be decided based on generalized, class-wide proof.  Cline, 159 F.4th at 1187–88.  And they are the questions that go to the heart of Plaintiffs' claims.[12]

Unsurprisingly, Defendants argue that individual issues predominate.  Aplee. Br. at 28–43.  Their argument is now familiar: that determining the ownership rights of current payees and tracing their interests back to the Littell class "would be a painstaking, individualized, class-member-by-class-member process that would make it impossible to resolve the claims in this case 'in one stroke.'"  Id. at 29 (quoting Wal-Mart Stores, Inc., 564 U.S. at 350).  They maintain that "hundreds or thousands of mini-trials . . .  would be necessary[.]"  Id. at 31.

For reasons previously stated, we disagree that individual issues predominate. Defendants are correct that eventually each class member will need an ownership interest that connects to the Littell settlement.  But Defendants have conjured a fraught situation of indeterminable ownership, notwithstanding their current business operations and payees.  Regardless, the mechanics of this determination are best left for the damages stage.  The district court would first resolve whether Defendants breached the settlement and whether both or either Defendant can be held liable.

---

[12] Plaintiffs described their claims as breach of contract claims.  See I Aplt. App. 24–25; Aplt. Reply Br. at 13.  "The elements of a breach of contract claim are: (1) the existence of a contract between the parties; (2) sufficient consideration to support the contract; (3) the plaintiff's performance or willingness to perform in compliance with the contract; (4) the defendant's breach of the contract; and (5) damages to the plaintiff caused by the breach."  Stechschulte v. Jennings, 298 P.3d 1083, 1098 (Kan. 2013).  Considering the elements of a breach of contract claim, Cline, 159 F.4th at 1186, the only elements at issue are breach (a common issue) and damages (an individualized issue).  And individualized damages issues do not defeat predominance.  Id. at 1187.

Only then would the court address damages issues, including who can recover and precisely how much.  Crucially, any issues as to individual ownership interests do not affect the core question of Defendants' liability.  Defendants' alleged systematic breach of the settlement is the predominant issue.  See Cline, 159 F.4th at 1187–88; Naylor Farms, Inc., 923 F.3d at 782–83.

Returning to our discussion of Black, we do not read that decision to require certainty that every class member could have suffered an injury to satisfy predominance.  See Black, 69 F.4th at 1185; see also Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC, 31 F.4th 651, 669 (9th Cir. 2022) (rejecting "argument that Rule 23 does not permit the certification of a class that potentially includes more than a de minimis number of uninjured class members"); In re Nexium Antitrust Litig., 777 F.3d at 21–22 (explaining how it may be impossible to exclude all uninjured class members at the preliminary certification stage and how ultimately defendant will not pay those uninjured class members).  Finally, we are not persuaded by Defendants' concern over mini-trials because individual damages issues do not typically defeat predominance, Cline, 159 F.4th at 1187, and we have already rejected Defendants' concern over the difficulty of sorting through their own records.  The class satisfies predominance.[13]

---

[13] We have considered the remaining arguments against predominance in Defendants' brief and are not persuaded by them.  Aplee. Br. at 32–43.

### 5. Superiority.

Rule 23(b)(3) provides a series of factors courts can consider in the superiority analysis. They include:

(A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.

Menocal, 882 F.3d at 915; Fed. R. Civ. P. 23(b)(3).

The district court held that because Plaintiffs failed on predominance, typicality, adequacy of representation, and ascertainability, they could not show that a class action is the superior method to resolve whether Defendants breached the settlement. VII Aplt. App. 248–49. Having found that this putative class action meets all other certification requirements, we have little trouble concluding that superiority is also satisfied. We accept Plaintiffs' arguments that the above factors weigh in favor of class treatment of their claims. See Aplt. Br. at 47–48. Finally, we note that Cline said that administrative feasibility may bear on whether class resolution is superior to individual resolution. 159 F.4th at 1196. But for all the reasons already discussed, the purported difficulties in determining who can recover do not convince us that this dispute is ill-suited for a class action. The class satisfies superiority.

### Conclusion

Ultimately, we are not convinced by Defendants' arguments against certifying this class. We fail to see how a class action is not the ideal method to litigate the

30

breach of a class action settlement.  Accordingly, we **REVERSE** the district court and **REMAND** with instructions to certify a class consistent with this opinion.